**EXXON CORPORATION, Appellant,**

v.

**BUTLER DRILLING COMPANY et al., Appellees.**

**No. 16299.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

April 11, 1974.

Rehearing Denied May 16, 1974.

Frank L. Heard, Jr., William A. Duncanson, Robert D. McGee, Houston, for appellant.

Frank M. Bean, Houston (Bean & Manning, Houston, of counsel), for appellees.

PEDEN, Justice.

Butler Drilling Company and Production Maintenance Company brought this action against Exxon Corporation, successor to Humble Oil & Refining Company, for damages to their drilling rig and related equipment resulting from a blowout and a fire on October 24, 1966.

On September 13, 1966 Butler commenced drilling a well for Humble under the terms of a Master Drilling Contract. On September 28, 1966 Humble provided a 2-inch Nordstrom valve as called for in the Drilling Order, which was made part of the Master Drilling Contract. Humble had conducted a visual examination of the valve, manual operation tests, pressure tests with water to 4500 pounds per square inch, and had inserted lubricants or sealants in the valve prior to delivery to Butler. On the day of delivery the valve was successfully tested after installation on the well head to 2350 PSI.

As part of the efforts to complete the well, the valve was opened so the blowout preventers could be washed out, and it was left open. A new crew came on duty following the washing out process and began cleaning up the rig site. The driller was unable to clear the mud away from the area where the Nordstrom valve was located. It was found that mud was flowing from the well through the valve, so an attempt was made to close the valve, but it failed to hold. The driller tried to open and close the valve to see if the valve plug was properly seated, but the flow of mud continued and it was accompanied by gas. An hour or an hour and a half later the fire which damaged Butler's drilling rig started.

In response to special issues bearing the indicated numbers, the jury made these findings: 1) the involved valve was in a defective condition when furnished by Humble for the use of Butler; 2) such defective condition was latent (i. e., could not have been discovered by the exercise of ordinary care); 3) before furnishing the involved valve for the use of Butler, Humble failed to make such an inspection of it as would have been made by an operator using ordinary care and 4) such failure was a proximate cause of the occurrence in question.

The jury did not find from a preponderance of the evidence that 5) after receiving the valve from Humble, Butler failed to make such an inspection of it as would have been made by a drilling contractor using ordinary care; 7) on the occasion in

question Butler failed to keep such a look-out for movement of mud from the valve as a drilling contractor using ordinary care would have kept or that 9) on the occasion in question Butler failed to make such closure of the valve as a drilling contractor using ordinary care would have made. The jury was not required to answer predicated defensive issues numbers 6, 8 and 10, which inquired as to proximate cause.

Appellant's fifth point of error is that the trial court erred in overruling the appellant's motion for judgment on the verdict because the jury found that the defective condition of the valve was latent.

Appellant's twelfth point of error is that the trial court erred in denying appellant's motion for a new trial and in entering judgment on the jury verdict because the jury's answers to special issues number 2 and 4 are in irreconcilable conflict and cannot support the judgment entered.

We will consider the fifth and twelfth points of error together.

"To require a judgment entered on a verdict containing conflicting answers to be set aside, the conflict between the answers must be such that one answer would establish a cause of action or defense, while the other would destroy it . . .

"To apply this test, the court must consider each of the answers claimed to be in conflict, disregarding the alleged conflicting answer but taking into consideration all of the rest of the verdict, and if, so considered, one of the answers would require a judgment in favor of the plaintiff and the other would require a judgment in favor of the defendant, then the answers are fatally in conflict. It is essential that the party seeking to set aside a verdict on the ground of conflict must be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judg-ment different from that which the court has entered." Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 147, 222 S. W.2d 985 (1949).

Our Supreme Court has also stated:

"A conflict in jury findings will not prevent the rendition of judgment and require a mistrial unless the findings, considered separately and taken as true, would compel the rendition of different judgments. . . Moreover, it is the duty of the courts to reconcile apparent conflicts in jury findings if that can reasonably be done." Texas & Pacific Railway Company v. Snider, 159 Tex. 380, 321 S.W.2d 280 (1959).

We have noted that by its affirmative answer to Special Issue No. 2 the jury found that the defective condition of the Nordstrom valve was latent, and a latent defect was defined as one which could not have been discovered by the use of ordinary care. In answering Special Issue No. 4 the jury found that before furnishing the valve for Butler's use, Humble's failure to make such an inspection of it as would have been made by an operator using ordinary care was a proximate cause of the occurrence in question. The jury was instructed that a valve is in a defective condition if it is unreasonably dangerous to the user or his property, that is to say, dangerous to an extent beyond that which would be contemplated by the ordinary user with the knowledge available to him as to the characteristics of the valve.

These findings appear to be in conflict. If the defective condition of the valve could not have been discovered by the use of ordinary care, then Humble's failure to use ordinary care in inspecting the valve could not be a proximate cause of the occurrence giving rise to this suit.

We hold that under the evidence in this case the conflict between issues 2 and 4 can be reconciled. Special Issue No. 1 asked whether the valve was in a defective condition "when furnished." Special Issue

No. 2 was predicated on an affirmative answer to Issue No. 1, so the same time reference is involved in the finding that the defective condition was latent. On the other hand, Issue No. 3 asks whether Humble failed to use ordinary care in making its inspection "before furnishing" the valve to Butler, so predicated Special Issue No. 4, the proximate cause issue, also applies to the time before the valve was furnished by Humble.

There is opinion evidence in the record that a defective condition of the valve such as scoring on its plug or body could be discovered only by an internal inspection.

Under the evidence in this case the jury was entitled to believe that since Humble had had the valve stored in a warehouse before delivering it to Butler at the well for installation, the exercise of ordinary care required Humble to disassemble the valve for an internal inspection before delivering it. The evidence also permitted the jury to decide, however, that the exercise of ordinary care did not require an internal inspection by Butler after it received the valve in the field.

We overrule the appellant's fifth and twelfth points.

In Humble's first four points of error it alleges that it had no duty to inspect the valve prior to its delivery to Butler because Section 13.8 of the Master Drilling Contract relieved Humble of the duty to inspect the equipment provided to Butler and contractually placed that duty upon Butler. Absent this contractual provision, it is clear that since Humble had a business interest in supplying the Nordstrom valve to Butler, Humble had a common law duty to exercise reasonable care to discover its dangerous condition or character. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (1953); Restatement, Torts, Sec. 392.

"Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W. 2d 508 (Tex.1947).

Section 13.8 states:

"Inspection of Materials Furnished by Operator: Contractor (Butler) shall carefully examine all casing, equipment, machinery, tools or other items furnished by Operator (Humble) and if any defects are found therein sufficient to make the use of any such items unsuitable or unsafe. Contractor (Butler) shall immediately notify Operator (Humble) of such defect or defects and Operator (Humble) shall at once replace the items so found defective. Should Contractor (Butler) fail to report a defect in such item or items, Contractor (Butler) shall be deemed to have assumed all risks and all liability for any mishap which may occur in the drilling of said well by reason of failure or defects in such casing, equipment, machinery, tools, or other items except for failure due to latent defects."

Does this language requiring Butler to carefully examine the Nordstrom valve provided by Humble relieve Humble of its common law duty to provide Butler with suitable and safe equipment?

Humble contends that the entire duty of inspection is placed upon Butler and that Butler assumed all risk and all liability for the failure of the defective valve unless the defect causing the mishap was latent. Butler contends that Humble's duty to inspect is not relieved by Section 13.8, its effect being to place an additional duty on Butler; that Butler assumed all the risk and liability only when it failed to report a patent defect to Humble.

We hold that the contract relieves Humble from liability only where damages are caused by patent defects which Butler fails to report to Humble.

Under the jury findings in this case, as reconciled, the exercise of ordinary care required Humble to disassemble the valve before delivering it to Butler but did not require Butler to do so after receiving it. The contract did not relieve Humble of its common law duty to make a reasonable inspection (i. e., disassemble the valve) nor require Butler to assume the risk because when the valve was delivered to Butler the defect was latent. We overrule the appellant's first four points.

■ Appellant's sixth point of error complains of the trial court's refusal to submit to the jury special issues and a definition requested by the appellant relating to Butler's failure to timely close the valve. The refused material was:

"Do you find from a preponderance of the evidence that Butler Drilling Company failed to timely close the Nordstrom valve after hanging the 5½ inch casing?

"In connection with the above and foregoing Special Issue you are instructed that the word 'timely' is defined as the time at which a person of ordinary care under the same or similar circumstances would have taken such action.

"If you have answered (the foregoing) Special Issue 'Yes', and only in that event, then answer:

"Do you find from a preponderance of the evidence that such failure, if any, was a proximate cause of the blowout?"

We overrule this point because we believe the refused issues and definition are but other phases and shades of Special Issues No. 9 and 10 which were submitted to the jury. In No. 9 the jury was asked whether, on the occasion in question, Butler failed to make such closure of the valve as a drilling contractor using ordinary care would have made. Rule 279, Texas Rules of Civil Procedure, requires only that the controlling issues be fairly submitted. See Hullum v. St. Louis Southwestern Railway Co., 384 S.W.2d 163 (Tex.Civ.App.1964, writ ref. n. r. e.).

We find in the record no objection by the appellant to Special Issue 9 or 10.

■ In appellant's seventh point it says the trial court erred in refusing its motion to strike the answer of Butler's expert witness James Scott in response to a hypothetical question inquiring as to his opinion on whether scoring of the Nordstrom valve existed at the time it was furnished by Humble because there were insufficient facts to support his answer. In its next point of error the appellant says the trial court should not have submitted Special Issue No. 1 because there was no evidence to support its submission, arguing that only James Scott's testimony purported to support the submission of the first issue.

Mr. Scott qualified as an expert and testified in response to a hypothetical question that in his opinion the Nordstrom valve failed because it was internally scored at the time it was furnished to Butler by Humble. It is the appellant's position that Mr. Scott's testimony regarding the defect should be stricken since his answer to a subsequent question was that his opinion was based neither on facts within his personal knowledge nor on those contained within the hypothetical question.

The testimony in question, taken on cross-examination, was:

Q. "Is there anything that you know that was not stated in the question with regard to its usage prior to the time it was mounted that would suggest to you that it was damaged or scored prior to the time of mounting?

A. "Not from personal knowledge, no, sir.

Q. "So, if I understand your testimony then, you have no specific information and none out of the question which was propounded to you from which you can state it was—from

which you can have an opinion that it was damaged before the mounting or after the mounting?

A. "That's right."

We do not agree that the appellant's interpretation of this answer by Scott is the only logical one. The trial court was entitled to conclude after considering all of his testimony that he meant by his answer that his opinion was based neither on personal knowledge nor on assumed facts which he had obtained outside of the hypothetical question. We think he did not mean that he had failed to base his opinion on facts stated in the hypothetical question.

Objections had been made, at the time the hypothetical question was asked, that two relevant facts had been omitted: that the valve had been hydrostatically tested by Humble at its prior location and that Butler had opened and closed it under pressure. The alleged omissions in the question were later supplied, and Scott testified that none of the additional facts changed his mind. His opinion that there was a defect at time of delivery to Butler properly remained before the jury, and his testimony alone provides sufficient evidence for the jury's finding.

The appellant's ninth point of error asserts that the trial court erred in refusing to submit a series of special issues, the first of which was:

"Do you find from a preponderance of the evidence that following the hanging of the 5½″ casing Butler Drilling Company failed to connect the tapped bull plug and needle valve assembly to the Nordstrom valve?"

We also overrule this point. It is not clear from the evidence what is meant by "hanging" of the 5½″ casing, but it appears that the reference was to a time soon after the blowout preventers were washed out. It is uncontroverted that Butler failed to connect the tapped bull plug and the needle valve assembly to the Nordstrom valve after they were removed for

clean-up operations and prior to the blowout.

■■■ Rule 272, Texas R.C.P. includes a provision that the court's charge "shall only submit controverted questions of fact." The remaining issues of this series were submitted conditioned on an affirmative answer to this one. Refusal to submit issues conditioned on an affirmative answer to another refused issue is not improper. Isenhower v. Bell, 365 S.W.2d 354, 358 (Tex.1963); Chermanie v. Scott, 324 S. W.2d 87, 89 (Tex.Civ.App.—1959, writ ref. n.r.e.). The trial court did not err in refusing to submit the issues as requested; in order to preserve error the appellant should have requested unconditional submission of the disputed questions of fact. See Strauss v. LaMark, 366 S.W.2d 555 (Tex.1963).

■■■ Appellant complains in its tenth point of error that the trial court erred in overruling its motion to disregard the jury's negative finding in response to Special Issue No. 7 (which asked whether Butler failed to keep a proper lookout for movement of mud from the valve) because the undisputed evidence established that Butler failed to maintain any lookout at the valve immediately before the blowout.

We hold that there is some evidence that Butler's employees kept a lookout at the valve at the time in question, and we overrule the point of error. It is well settled that the standard of conduct to meet the legal test of ordinary care is ordinarily a matter peculiarly within the province of the trier of facts.

A careful examination of the entire record discloses that the evidence regarding the lookout for movement of mud is such that it was proper for the court to submit the issue to the jury and to abide by its finding.

■■■ The appellant's remaining point of error alleges that the trial court erred in failing to strike the answer of Mr. Herbert

Shilstone, an expert witness called by Butler, given in response to a hypothetical question asking the possible causes of the Nordstrom valve's failure after it was tested; the appellant argues that the witness was asked to assume facts having no basis in the evidence.

We do not agree with the appellant's premise that the assumed facts had no basis in the evidence, but in any event the error, if any, was harmless under Rule 434 because the facts in question were supplied by the testimony of Mr. Scott.

Affirmed.