Susan ROBBINS, Appellant,

v.

Ladonna CAPOZZI, Adleta & Poston, Inc. and Susan Bratton, Appellees.

No. 12–02–00040–CV.

Court of Appeals of Texas, Tyler.

Nov. 8, 2002.

Rehearing Overruled Jan. 6, 2003.

Bryan D. Perkins, Stalcup & Casterline, Dallas, for appellant.

Maryann S. Brousseau, Brousseau & Assoc. P.C., J. Kent Newsom, Newsom, Terry & Newsom, Dallas, for appellees.

Panel consisted of GOHMERT, JR., C.J., WORTHEN, J., and GRIFFITH, J.

LOUIS B. GOHMERT, JR., Chief Justice.

Appellant Susan Robbins ("Robbins") appeals the trial court's grant of summary judgment in favor of Appellees, LaDonna Capozzi ("Capozzi"), Adleta & Poston ("A & P") and Susan Bratton ("Bratton"). Robbins raises three issues on appeal. We affirm.

## BACKGROUND

In 1999, Capozzi purchased Unit C at the 3537 Normandy condominium project ("Unit C") in Highland Park from Mockingbird Corporation as a place for her daughter, Meghan Capozzi ("Meghan"), to live while attending SMU. Unit C is part of a five-unit condominium complex with enough garage space to house two cars for each unit.

In order to enter the Unit C garages, a 90–degree turn must be made from a driveway that runs along the side of the garages. Before any of the condominiums were sold, the developers, Wallace Swanson ("Swanson") and Allie Beth Allman ("Allman"), satisfied themselves that the garages would accommodate different types of cars. Swanson successfully parked a large Jaguar sedan in one of the Unit C garages and both Swanson and Allman parked Allman's Mercedes SUV in one of the garages.

Shortly after her mother bought Unit C, Meghan discovered that SMU did not allow freshmen to live off campus and had to give up the idea of living in the condominium during her freshman year. Although Meghan did not live at Unit C, she went there on occasion and stored some of her belongings there. Whenever she did so, she parked her Audi A4 sedan in one of the Unit C garages. Meghan successfully negotiated the 90–degree turn from the driveway into the garage by backing up and maneuvering her vehicle into the garage. One of Meghan's friends also successfully maneuvered his car, a Mazda MX–3, into one of the garages.

Meghan decided that it would be more convenient for her to park her car in the driveway next to her front door instead of in the Unit C garages. She believed the third space would not only eliminate the need to line up her car to park in the Unit C garages but would also allow her to access her own unit more easily. She also planned to have two roommates living with her the following year, giving rise to the need for a total of three parking spaces for the property. Meghan's father, John Capozzi, discussed the idea with Allman and in February of 2000, Mockingbird Corporation executed and recorded a "Common Element Designation for 3537 Normandy, a Condominium" (the "Driveway Designa-

tion"), designating an additional parking space in the driveway of the complex (the "driveway space") to be used by the owner of Unit C. Once the Driveway Designation was recorded, Meghan parked her car in the driveway space whenever she visited the condo.

Meghan later decided that she would leave SMU and transfer to another university in the Northeast. Capozzi decided to sell Unit C and hired A & P as the broker. In March of 2000, Capozzi, as Seller, and Robbins, as buyer, entered into a "Residential Condominium Contract (Resale)-All Cash, Assumption Third Party Conventional or Seller Financing" (the "Condo Contract") for the sale of the property. In the Seller's Disclosure Notice (the "notice") tendered to Robbins pursuant to the Condo Contract, Capozzi checked boxes indicating that the garage was in "Working Condition" and had "no known defects." Robbins also received a copy of the Driveway Designation as part of a "Condominium Information Statement" that included copies of all recorded documents affecting the complex. Robbins, who drove a Toyota 4–Runner SUV at the time, visited the property four times before she bought it but never tried to park her SUV in any of the Unit C garages. The parties closed on the Condo Contract, and Robbins received her deed to the property in April.

Shortly before Robbins moved into Unit C in late April, she discovered that she could not maneuver her vehicle into either of Unit C's garages. Robbins and her father then attempted to park other different-sized vehicles in the garages and could not get them into the garages. One of Robbins's co-workers parked a two-door Acura coupe in one of the garages after he pulled up to the entrance and drove his car forward and backward, turning each time to line his car up in order to have an unimpeded entry into the garage. It took the co-worker about ten minutes to complete this process. Later that month, Robbins learned that Meghan had experienced difficulties maneuvering her car into the parking spaces and that Capozzi and her husband had negotiated the Driveway Designation.

In September, Robbins filed suit against Capozzi, A & P, and A & P's agent, Susan Bratton, asserting claims for common law fraud, a violation of sections 17.46(b)(5) and (23) of the Deceptive Trade Practices Act ("DTPA"), and fraud in a real estate transaction in violation of section 27.01 of the Texas Business and Commerce Code. Robbins alleged that the fraud arose out of all three defendants' failure to disclose the difficulties Meghan encountered when parking her car in the Unit C garages. Robbins sought rescission of the transaction, return of the purchase price paid for the property, exemplary damages, costs and attorney's fees.

Capozzi, A & P, and Bratton answered, claiming that none of them knew of anyone who claimed to be unable to park any particular vehicle in either of the Unit C garages. Capozzi also filed a counterclaim, seeking her attorney's fees pursuant to Texas Rule of Civil Procedure 13, a provision in the Condo Contract [1], and section 17.50(c) of the Deceptive Trade Practices Act.

The trial court granted summary judgment to Capozzi, A & P and Bratton on all of Robbins's claims. In a bench trial on September 18, the trial court ruled that

1. The provision in the Condo Contract under which Capozzi sought her attorney's fees states "[t]he prevailing party in any legal proceeding brought under or with respect to the transaction described in his contract is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees."

Capozzi was entitled to recover her attorney's fees under the Condo Contract.

Robbins filed a motion for new trial on October 19, which was overruled by operation of law. Robbins then filed her notice of appeal on December 19.

*STATUTORY AND COMMON LAW FRAUD CLAIMS*

In her first and second issues, Robbins argues that the trial court erred in granting summary judgment on the statutory and common law fraud claims she asserted against each defendant.

**Standard of Review**

The party with the burden of proof must prove it is entitled to judgment by establishing each element of its claim or defense as a matter of law, or by negating an element of a claim or defense of the opposing party as a matter of law. *Martin v. Harris County Appraisal Dist.,* 44 S.W.3d 190, 193 (Tex.App.Houston [14th Dist.] 2001, pet. denied); TEX.R. CIV. P. 166a(c). When a motion for summary judgment raises multiple grounds, we may affirm if any ground is meritorious. *Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996); *Hanson v. Republic Ins. Co.,* 5 S.W.3d 324, 327 (Tex.App.Houston [1st Dist.] 1999, pet. denied). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the non-movant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). The only question is whether an issue of material fact is presented. *See* TEX.R. CIV. P. 166a(c).

■ Once the movant has established a right to summary judgment, the non-movant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See, e.g., City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678–79 (Tex.1979). Where summary judgment does not specify the grounds on which it was granted, the non-movant on appeal must show that each ground alleged in the motion is insufficient to support it. *Duran v. Furr's Supermarkets, Inc.,* 921 S.W.2d 778, 784 (Tex.App.-El Paso 1996, writ denied).

**Common Law Fraud**

Robbins contends that the trial court should not have granted summary judgment on the common law fraud claims she asserted against Capozzi, Bratton and A & P because she raised a genuine issue of material fact on each element of the claims.

■ In order to recover for common law fraud, a claimant must prove (1) a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made the statement recklessly without any knowledge of truth and as a positive assertion, (4) the representation was made with the intention that it be acted upon by the other party, (5) that party acted in reliance upon the representation, and (6) that party suffered injury. *Johnson & Higgins, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 524 (Tex.1998).

*LADONNA CAPOZZI*

Robbins contends that Capozzi's representation on the seller's disclosure that the Unit C parking garage was in "working condition" and had "no known defects" was false because Robbins could not maneuver her Toyota 4–Runner into the garage. Robbins further contends that this representation was material because Robbins's deposition testimony, attached to her response to Capozzi's motion for summary

judgment, revealed that she would not have bought Unit C if she had been told about the parking difficulties. Robbins also argues that a genuine issue of material fact exists as to whether or not Capozzi had a duty to disclose to Robbins (1) the difficulties Meghan had when parking her vehicle in the garage and (2) the reason the Driveway Designation had been amended to provide a third parking space for Unit C outside of the enclosed parking structure.

■ It is undisputed that Capozzi represented that the garage was in "working condition" and had "no known defects"; however, Robbins has not presented any evidence to raise a fact issue on the falsity of this representation. She has not directed us to anything in the record demonstrating that the garage was not in working condition or was defective in any way. She only complains that she could not drive her vehicle into the garage because the width of the driveway that ran along the side of the garage was not large enough to compensate for the width of the turning radius of her vehicle. Thus, Robbins's complaint is, in substance, that the driveway is defective. We first note that Capozzi's representations relate only to the garage and not to the driveway. However, even if the term "garage" includes the driveway, the record does not support Robbins's contention that the driveway is defective. Capozzi testified that five different vehicles (an Audi A4, a Mazda MX-3, a full-size Jaguar, a Mercedes C280, and a Mercedes SUV) have been parked in the Unit C garages. In April of 2001, A & P conducted an inspection of the garages. A & P's employee, Duke Jimerson, drove a 1997 Mercedes C280 sedan into one of the Unit C garages three times with no difficulty. Robbins even testified in her deposition that her co-worker parked a car in the garage, albeit after ten minutes of maneuvering his vehicle. Therefore, Robbins has not shown that the driveway is defective, but merely that the driveway does not accommodate the turning radius of her particular vehicle and possibly that of her co-worker's vehicle. Although this situation may be an inconvenience, it is not a defect. Consequently, Robbins has not shown that Capozzi's representations were false.

■ Robbins also argues that Capozzi's failure to disclose the difficulties Meghan encountered while parking her car constituted fraud. As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex.2001). Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent. *Id.* Whether such a duty exists is a question of law. *Id.* A seller of real estate is under a duty to disclose those material facts which would not be discoverable by the buyer in the exercise of ordinary care and due diligence. *Pairett v. Gutierrez,* 969 S.W.2d 512, 515 (Tex.App.Austin 1998, pet. denied). "Material" means a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question. *American Medical Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 338 (Tex.App.Houston [14th Dist.] 1991, no writ). Likewise, a seller of real estate has no duty to disclose material facts which would be discoverable by the buyer in the exercise of ordinary care and due diligence.

■ The record demonstrates that Robbins visited the property four times before the closing date but never tried to park her vehicle in the Unit C garages because when she looked at the garages,

she thought she would have no problem driving into them. The record also supports Robbins's assertion that the parking at Unit C was material because Robbins testified at her deposition that she would not have bought the property if she had known about Meghan's parking difficulties. However, it is also undisputed that Robbins was provided a copy of the Driveway Designation before the closing date and had the opportunity to inquire about the reasons the Driveway Designation was obtained but chose not to.[2] Robbins also knew the size and turning capabilities of her own vehicle; therefore, she was in a much better position than Capozzi to discover whether or not her vehicle would be able to turn into the Unit C garages. Had Robbins exercised ordinary care and due diligence by attempting to park her vehicle in either of the garages before the closing date, she would have discovered that she could not turn her vehicle into the garages. Therefore, we hold that Capozzi did not have a duty to disclose any problems Meghan encountered when attempting to park her car in any of the Unit C garages. Robbins's common law fraud issue, as it relates to Capozzi, is overruled.

### SUSAN BRATTON AND A & P

Robbins argues that Bratton and A & P are liable for common law fraud because (1) Bratton acted in concert with Capozzi in preparing the Seller's Disclosure Notice and (2) a two-page sales flyer Bratton prepared for the marketing of Unit C failed to disclose the third parking space created by the Driveway Designation even though Bratton was aware of the difficulties Meghan encountered when parking

her car in Unit C's garages. Robbins contends that A & P is liable for the actions of Bratton, its agent, under a theory of *respondent superior*.[3]

In order to defeat Bratton's and A & P's motion for summary judgment, Robbins had to raise a genuine issue of material fact on each element of common law fraud. As is the case with Capozzi, Robbins has failed to show that any of the representations Bratton made were false. The evidence is undisputed that Robbins was made aware of the Driveway Designation before the closing date, yet failed to inquire about the reasons behind the designation and also failed to determine, after four visits to Unit C, whether her vehicle would be able to turn into the Unit C garages. Whether Robbins's vehicle would be capable of turning into one of the Unit C garages is the type of information that a buyer would be expected to discover by ordinary inquiry. *See Bradford,* 48 S.W.3d at 756. Robbins's common law fraud issue, as it relates to Bratton and A & P, is overruled.

### DTPA and Fraud in a Real Estate Transaction

In her original petition, Robbins alleged that Capozzi, Bratton and A & P violated the Deceptive Trade Practices Act ("DTPA") by failing to disclose the difficulties Meghan encountered in entering the Unit C garages from the driveway. Robbins also alleged that Capozzi, Bratton and A & P all committed fraud in a real estate transaction in violation of section 27.01 of the Texas Business and Commerce Code.

---

**2.** Capozzi testified that she obtained the Driveway Designation because it was "more convenient" for her daughter to "pull up" and park at the door of the condominium than to take the "extra time" to "line up" her car in order to park in the garage.

**3.** Robbins's attempt to hold A & P liable for Bratton's actions under a theory of *respondeat superior* was not challenged by A & P.

### Deceptive Trade Practices

To recover damages under the DTPA, Robbins had to prove that Capozzi, Bratton and A & P engaged in "false, misleading or deceptive acts or practices" by

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have ... [or]

. . . .

(23) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

Tex. Bus. & Com.Code Ann. §§ 17.46(b)(5), (23).

 Robbins testified at her deposition that she would not have bought the property if she had known about Meghan's parking difficulties. However, mere nondisclosure of material information is not enough to establish an actionable DTPA claim. *Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 126 (Tex.App.Texarkana 1994, writ denied). In order to recover damages under the DTPA for the failure to disclose material information, the plaintiff must also show that the information was withheld with the intent of inducing the consumer to engage in a transaction. *Id.* In the case at bar, the evidence is well established that both Capozzi and Bratton knew that cars had been parked in the garages. However, there is no evidence in the record that Capozzi or Bratton knew that Robbins's vehicle could not be parked in the garage or that Capozzi and Bratton withheld any information regarding Meghan's parking difficulties with the intent to induce Robbins into purchasing Unit C. Therefore Robbins's issue, as it relates to her cause of action under the DTPA, is overruled.

### Fraud in a Real Estate Transaction

 Robbins also alleged that Capozzi, Bratton and A & P violated section 27.01 of the Texas Business and Commerce Code, entitled "Fraud in Real Estate and Stock Transactions." In order to recover for a violation of section 27.01, a plaintiff must show (1) a representation of a material fact was made, (2) the representation was false, (3) the representation was made to induce a person to enter a contract, (4) the person relied upon that representation in entering the contract, and (5) the false representation caused an injury. *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 249 (Tex.App. Waco 2001, pet. denied). A cause of action for statutory fraud differs from the common law cause of action only in that it does not require proof that the false representation was made knowingly or recklessly. *Id.*

 Although statutory and common law fraud differ in one element, they also have one element in common: the falsity of the representation. As we stated in our discussion on the defendants' liability under Robbins's common law fraud theory, Robbins has not presented any evidence to raise a genuine issue of material fact on the falsity of any representation by Capozzi, Bratton, or A & P. Robbins's issue, as it relates to statutory fraud, is therefore overruled.

### Attorney's Fees

The Condo Contract states that "[t]he prevailing party in any legal proceeding brought under or with respect to the transaction described in his contract is en-

titled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees." In her third and final issue, Robbins contends that the trial court erred in awarding Capozzi her attorney's fees pursuant to this provision in the Condo Contract because neither Robbins nor Capozzi asserted any cause of action for breach of the underlying contract or, alternatively, because such a ruling contravenes Texas public policy as expressed in and by the DTPA.

Capozzi maintains that the "transaction described in this contract" was the sale of Unit C to Robbins. Capozzi further argues that because Robbins admitted in her Original Petition that her claims "concern Defendant Capozzi's conduct in connection with Defendant Capozzi's sale of real estate in Dallas County, Texas to [Robbins]," and because Capozzi defeated all of Robbins's claims by obtaining a favorable ruling on her motion for summary judgment, Capozzi was entitled to recover her attorney's fees as "the prevailing party" in the legal proceeding below.

 A "prevailing party" successfully prosecutes or defends against an action, prevailing on the main issue, even if not to the extent of his or her original contention. *See City of Amarillo v. Glick,* 991 S.W.2d 14, 17 (Tex.App.Amarillo 1997, no pet.). Whether a party is a prevailing party is based on success on the merits, not the award or denial of damages. *Id.* A prevailing party is one who is vindicated by the trial court's judgment. *Id.; Dear v. City of Irving,* 902 S.W.2d 731, 739 (Tex.App.Austin 1995, writ denied). In the case at bar, Capozzi was the "prevailing party" because she successfully defended all of Robbins's claims. Thus, Capozzi is entitled to recover her costs and attorney's fees if Robbins's fraud and DTPA claims were "brought under or with

respect to the transaction" described in the Condo Contract.

 Robbins, through the initiation of legal proceedings, sought to rescind the contract on the basis that Capozzi's representations regarding the Unit C garage were false and that those representations were made for the purpose of inducing Robbins to enter into the Condo Contract. In her lawsuit, she alleged causes of action for statutory and common law fraud, as well as violations of the DTPA. Robbins's Original Petition alleges that Capozzi made the alleged misrepresentations in order to induce Robbins into the transaction, *i.e.,* the purchase of Unit C. The alleged misrepresentations and the transaction go hand in hand. We hold that Robbins's lawsuit was "brought under or with respect to the transaction" between Robbins and Capozzi. Consequently, Capozzi is entitled to recover her attorney's fees pursuant to the Condo Contract. Robbins's third issue is overruled.

## CONCLUSION

The trial court did not err in granting summary judgment in favor of Capozzi because Robbins failed to raise a genuine issue of material fact on her statutory fraud, common law fraud, and DTPA claims. The trial court also committed no error in awarding Capozzi her attorney's fees pursuant to the provision in the Condo Contract.

Therefore, the trial court's judgment is *affirmed.*