# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

ON MOTION FOR REHEARING

NO. 03-10-00129-CV

**Appellant, Old HH, Ltd.// Cross-Appellant, Mary Henderson**

**v.**

**Appellee, Mary Henderson// Cross-Appellees, Old HH, Ltd.;**
**Christopher Conyers and Yolanda Conyers**

FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 05-821-C368, HONORABLE BURT CARNES, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

We withdraw the opinion and judgment dated July 27, 2011, and substitute the following opinion and judgment in their place. We deny appellant's motion for rehearing.

Yolanda and Christopher Conyers sold Mary Henderson their house, which had been built by Old HH, Ltd. After discovering alleged defects in the house, Henderson sued the Conyerses and Old HH, asserting causes of action against the Conyerses for violations of the Deceptive Trade Practices-Consumer Protection Act (DTPA), *see* Tex. Bus. & Com. Code Ann. §§ 17.45, .50 (West 2011), common law fraud, statutory fraud, and negligent misrepresentation, and causes of action against Old HH for violations of the DTPA, breach of the implied warranty of good workmanship, and breach of the implied warranty of habitability. The Conyerses filed a counterclaim requesting

their attorneys' fees under a provision of the sales contract permitting attorneys' fees to be awarded to "the prevailing party in any legal proceeding brought under or with respect to the transaction." Following a six-day trial, the jury found that Old HH breached the implied warranty of good workmanship. The jury failed to make any liability findings against the Conyerses. The district court rendered judgment that Henderson take nothing by way of her claims against the Conyerses and awarded them their requested attorneys' fees. The judgment also awarded Henderson $99,700 in damages against Old HH plus pre-judgment interest. Both Old HH and Henderson appealed the district court's judgment. We will affirm the portion of the judgment awarding the Conyerses their attorneys' fees; we will reverse the portions of the judgment adjudicating Henderson's claims against Old HH and remand those claims to the district court for a new trial.

### FACTUAL AND PROCEDURAL BACKGROUND

The Conyerses purchased a single-family residence from the builder, Old HH, in 1996. In January 2002, the Conyerses and Henderson entered into a home sale contract ("the Contract") whereby the Conyerses conveyed the residence to Henderson. In her petition, Henderson alleged that in September 2003 water began leaking into the residence from a "dead valley" located above the front entry. She claims that subsequent mold testing revealed the presence of pathogenic mold in the living room, home office, a bedroom, and the chimney area. Henderson hired an engineer to inspect the house, and the engineer reported that there were numerous other construction defects, including defects in the foundation and roof framing.

Henderson sued Old HH alleging breaches of the implied warranty of good workmanship and the implied warranty of habitability, breach of express warranties, negligence, and

2

DTPA violations. *See* Tex. Bus. & Com. Code Ann. §§ 17.46, .50 (West 2011). Henderson also sued the Conyerses, asserting causes of action for negligent misrepresentation, fraud, statutory fraud, and DTPA violations. *Id.* Henderson non-suited her claims against Old HH for breach of express warranties, and the trial court granted Old HH's motion for partial summary judgment on Henderson's DTPA and negligence claims.

After a six-day trial, the jury found that Old HH breached the implied warranty of good workmanship and awarded Henderson $85,000 to compensate her for the "reasonable cost of repairs necessary to cure any construction defect," $4,500 as reasonable and necessary engineering and consulting costs, and $10,200 as the "reasonable expenses of temporary housing reasonably necessary during the repair period." The district court refused Henderson's request to submit a question to the jury asking whether Old HH violated the implied warranty of habitability. The jury found in favor of the Conyerses on all issues related to the causes of action asserted against them. After trial, the district court granted the Conyerses' motion for judgment and for attorneys' fees pursuant to a provision in the Contract. The court rendered judgment that Henderson recover from Old HH $99,700 in actual damages and $20,213 in pre-judgment interest, that Henderson take nothing by her claims against the Conyerses, and that the Conyerses recover $83,700 in attorneys' fees with additional amounts awarded conditioned on Henderson's unsuccessful appeals to this Court and the supreme court. This appeal followed.

In its first two issues, Old HH contends that the district court erred by submitting a question to the jury regarding breach of the implied warranty of good workmanship because (1) it had disclaimed that warranty when it sold the residence to the Conyerses, and (2) the alleged defects

3

were discoverable by a reasonably prudent inspection, i.e., they were not latent. In its third and fourth issues, Old HH challenges the sufficiency of the evidence supporting the jury's award of damages to compensate Henderson for the cost of repairs to the residence, engineering and consulting fees, and temporary housing. Henderson, as cross-appellant, challenges the district court's award of attorneys' fees to the Conyerses, the exclusion of testimony from her expert witness regarding the cost to repair her residence, and the court's refusal to submit her question regarding Old HH's alleged breach of the implied warranty of habitability.

## DISCUSSION

We first consider whether the district court erred in awarding the Conyerses their attorneys' fees. We will next address Henderson's contention that the district court erred by refusing to submit to the jury a question regarding Old HH's breach of the implied warranty of habitability. Our disposition of that issue renders consideration of the remaining appellate issues unnecessary.

### *Award of Attorneys' Fees to the Conyerses*

At trial, the jury answered all liability questions regarding the Conyerses' conduct favorably to the Conyerses and against Henderson. Specifically, the jury failed to find that the Conyerses made any negligent misrepresentation to Henderson and failed to find that they committed fraud or statutory fraud against Henderson in the transaction. The jury also failed to find that the Conyerses engaged in any false, misleading, or deceptive act or practice or engaged in any unconscionable action or course of action that caused damages to Henderson.

After trial, the Conyerses requested an award of their attorneys' fees based on the following provision in the Contract:

> 17. **ATTORNEYS FEES:** The prevailing party in any legal proceeding brought under or with respect to the transaction described in this contract is entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

The district court granted the motion and rendered judgment awarding the Conyerses attorneys' fees of $84,709.01 for trial, $20,000 in the event of an unsuccessful appeal by Henderson to the court of appeals, and $20,000 in the event of an unsuccessful appeal by Henderson to the Texas Supreme Court. In her first issue, Henderson contends that the court erred by awarding the Conyerses their attorneys' fees because "they sought no affirmative relief and were awarded none by the [j]udgment" and therefore were not prevailing parties. We disagree.

The Conyerses may recover attorneys' fees under the Contract if they were the "prevailing party in any legal proceeding brought under or with respect to the transaction" described in the Contract. Henderson alleged that the Conyerses made misrepresentations or failed to make proper disclosures with respect to the sale of the home to her. Thus, the suit is plainly "with respect to" the home sale transaction described in the Contract. The central question, then, is whether the Conyerses were "prevailing parties."

Because the term "prevailing party" is undefined in the Contract, we "presume the parties intended the term's ordinary meaning." *International Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 565, 662 (Tex. 2005)). A prevailing party is the party "who successfully prosecutes the action or

5

successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention." *Johns v. Ram Forwarding, Inc.* 29 S.W.3d 635, 637-38 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, no pet.)). This Court has observed that "'prevailing party' status requires obtaining relief from the court (e.g., 'enforceable judgments on the merits and court-ordered consent decrees') that effect a 'material alteration of the legal relationship of the parties.'" *See Wibbenmeyer v. TechTerra Commc'ns, Inc.*, No. 03-09-00122-CV, 2010 WL 1173072, at \*10 (Tex. App.—Austin Mar. 26, 2010, pet. denied) (mem. op.) (citing *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603-05 (2001)). A prevailing party is one who is "vindicated by the court's judgment." *See Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2003, no pet.). A party may be a "prevailing party" even if the party is not awarded damages so long as that party is successful on the merits of the claim. *See Fowler v. Epps*, No. 03-08-00055-CV, 2010 WL 521109, at \*3 (Tex. App.—Austin Feb. 10, 2010) (mem. op.), *rev'd on other grounds*, *Epps v. Fowler*, ___ S.W.3d ___, 2011 WL 3796618 (Tex. Aug. 26, 2011).

The Conyerses, as defendants, did not seek recovery of any actual damages. Rather, their sole purpose in the litigation was to defend themselves against Henderson's causes of action. The Conyerses prevailed in the trial court when the court rendered a take-nothing judgment in their favor. That judgment effected a material alteration in the Conyerses' legal relationship with Henderson. Consequently, we hold they are entitled, under the "prevailing party" clause of the Contract, to their attorneys' fees for their defense of the claims asserted by Henderson related to the home sale transaction. *See Fitzgerald v. Schroeder Ventures II, LLC*, 345 S.W.3d 624, 630 (Tex.

6

App.—San Antonio 2011, no pet.) (defendants who obtained take-nothing judgment in their favor were prevailing parties entitled to recover attorneys' fees under parties' agreement); *Silver Lion, Inc. v. Dolphin Street, Inc.*, No. 01-07-00370-CV, 2010 WL 2025749, at *18 (Tex. App.—Houston [1st Dist.] May 20, 2010, pet. denied) (mem. op.) (defendant awarded take-nothing judgment on breach of contract claim was prevailing party entitled, under parties' agreement, to recover attorneys' fees for successfully defending claim against him). We overrule Henderson's first appellate issue.

### Breach of the Implied Warranty of Habitability

In her third issue, Henderson contends that the district court erred by refusing to submit to the jury a requested issue regarding Old HH's breach of the implied warranty of habitability. Old HH counters that the court correctly refused to submit the question because, as a subsequent purchaser of the home, the implied warranty of habitability does not extend to Henderson. The supreme court has held, however, that the implied warranty of habitability, which is implicit in the contract between the builder/vendor and the original purchaser, is automatically assigned to a subsequent purchaser. *Gupta v. Ritter Homes, Inc.*, 646 S.W.2d 168, 169 (Tex. 1983). The supreme court reasoned:

> As between the builder and owner, it matters not whether there has been an intervening owner. The effect of the latent defect on the subsequent owner is just as great as on the original buyer and the builder is no more able to justify his improper work as to a subsequent owner than to the original buyer.

*Id.* Henderson's status as a subsequent purchaser does not preclude her from recovering damages under a breach of the implied warranty of habitability theory.

7

Henderson requested the trial court to submit the following question to the jury:

> As to the subject house, did [Old HH] violate the implied warranty of habitability? You are hereby instructed that with regards to the construction of a house, the violation of the implied warranty of habitability means constructing or selling a house that was not suitable for human habitation.

Henderson contends that this question was submitted in substantially correct form and that the question and instruction were supported by the pleadings and the evidence. Rule 278 of the Texas Rules of Civil Procedure provides that "the court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and evidence." Tex. R. Civ. P. 278. This rule provides a substantive, non-discretionary directive to trial courts requiring them to submit requested issues to the jury if the pleadings and any evidence support them. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex. 1992). A trial court may refuse to submit a question only if there is no evidence in the record to warrant its submission. *Id.* To determine whether legally sufficient evidence supported Henderson's implied warranty of habitability submission, we must examine the record for evidence supporting submission of her question and ignore all evidence to the contrary. *Id.*

### 1. Evidence of latent defects

The extension of the builder's liability to subsequent purchasers under a breach of implied warranty of habitability theory is limited to latent defects that manifest themselves after the purchase and are not discoverable by the subsequent purchaser's reasonably prudent inspection at the time of sale. *Gupta*, 646 S.W.2d at 170 (Spears, J. concurring). Old HH argues that "the

8

evidence presented at trial, without question, demonstrated that the alleged defects in this case were not latent." We disagree.

"Latent defects" are those that are not known by or expressly disclosed to the buyer. *See Centex Homes v. Buecher*, 95 S.W.3d 266, 274 (Tex. 2002). In order to be covered by the implied warranty of habitability, the alleged defect must have been unknown to Henderson *and* not discoverable by a reasonably prudent inspection of the building at the time of sale. *Gupta*, 646 S.W.2d at 169. Henderson testified extensively regarding the defects in her home. She explained that the roof of the house had a "dead valley," which is a trough where two portions of the roof meet. The slope of this dead valley was insufficient to permit water to run off the roof. Rainwater accumulated in this dead valley until it either evaporated or was blown off by wind. The flashing in the dead valley was also inadequate to prevent water intrusion. Henderson testified that about one year after she purchased the house, several rooms experienced water intrusion as the result of this structural defect. Water also came through the skylight and a bay window in the master bedroom. The water intrusion required removal of the carpet, at which time Henderson noticed cracks in the foundation. She testified that these cracks were not visible from the home's exterior. Henderson hired a forensic engineer to further inspect the house and learned that the shingles were improperly layered causing the roof to leak; she also learned that the house was not built in conformance with its plans and specifications. The evidence showing that a number of the defects were not observable during a visual inspection of the home and that the water intrusion did not occur until approximately one year after Henderson purchased the home constitutes some evidence that the defects Henderson complained of were not discoverable by a reasonably prudent inspection. *See*

9

*7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys.*, 245 S.W.3d 488, 503 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (structural problems with expansion joints not discoverable at inception of lease were latent defects); *Exxon Corp. v. Butler Drilling Co.*, 508 S.W.2d 901, 904 (Tex. Civ. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (latent defect is one that could not have been discovered with ordinary care).

Old HH argues, however, that a reasonably prudent inspection means an inspection by a "reasonably prudent home inspector." In its view, the buyer herself cannot conduct a "reasonably prudent inspection" and, to demonstrate that the defects were latent, Henderson must have established that a reasonably prudent inspection *by a home inspector* would not have discovered them. We disagree. In *Gupta*, the supreme court explained that two of the reasons for extending the implied warranty to subsequent purchasers are (1) "the *buyer* cannot, by reasonable inspection or examination, discern such defects" and (2) "the *buyer* cannot normally rely on *his own judgment* in such matters." *Gupta*, 646 S.W.2d at 169 (emphases added). The implied warranty arises to protect the purchaser from defects that she herself cannot discover by reasonable inspection. There is no requirement that the defects be undiscoverable by a person with more knowledge or experience than the buyer, such as a professional home inspector.

Old HH points out that Henderson did hire a home inspector when she purchased the house and that the inspector prepared a report of his findings, which he provided to Henderson. Henderson, however, was unable to produce the entire report in discovery, which Old HH contends gives rise to a rebuttable presumption that the report would be "unfavorable to" Henderson. We understand Old HH to mean that it was entitled to a rebuttable presumption that the report disclosed

to Henderson the defects about which she now complains. We agree that if the report disclosed the defects to Henderson, those disclosed defects would not be covered by the implied warranty. *See Centex Homes*, 95 S.W.3d at 274 (latent defects are those that are not known by or expressly disclosed to buyer). At trial, Henderson testified about the home inspection. She stated that during his inspection the home inspector found some "negligible items that needed to be fixed—a total of under $1,000.00." Henderson further testified that the home inspector prepared a list of those items, and that list was admitted into evidence at trial. Henderson stated that she and Christopher Conyers "agreed to a price reduction to offset the cost of the nominal repairs that needed to be made that were identified by the home inspection company." At trial, Henderson asserted claims against the home inspector alleging that he failed to discover the defects, and her expert witness testified that the home inspector should have discovered them but did not. Henderson testified that she was not told that there was any problem with the home's foundation or roof. She stated that while the home inspector was inspecting the property, she walked around the house and did not notice any problems with the roof or foundation, nor any structural problems. Therefore, we conclude that the record contains some evidence that Henderson did not know of the alleged defects, even after her own reasonably prudent inspection of the residence, and that the alleged defects were not disclosed to her by her home inspector at the time of sale.

### 2. *Evidence that premises were uninhabitable.*

Breach of the implied warranty of habitability occurs when the defect is of a nature that will render the premises unsafe, unsanitary, or otherwise unfit for living therein. *See Kamarath v. Bennett*, 568 S.W.2d 658, 661 (Tex. 1978). The nature of the deficiency, its effect on habitability,

11

the length of time for which it persisted, the age of the structure, and the area in which the premises are located are all factors to be considered in deciding if there has been a breach of the warranty of habitability. *Id.* The existence of a breach is usually a question of fact to be determined by the circumstances of each case. *Id.* (citing *Reese v. Diamond Housing Corp.*, 259 A.2d 112 (D.C. Ct. App. 1969)). In the present case, the record contains evidence that engineering consultants hired by Henderson to inspect the house after the alleged defects manifested themselves advised her that she should move out of the house to protect herself. A report prepared by one of the consultants refers to the unsafe condition of the house, including unsafe structures. There was also extensive testimony regarding the presence of mold in the house. We conclude, therefore, that the record contains some evidence that the house was unfit to live in and that it would have been unsafe for Henderson to continue to live there.[1]

Because the pleadings and evidence supported submission of the requested issue regarding breach of the implied warranty of habitability, the trial court was required to submit the question and erred in failing to do so. When matters are timely raised and properly requested as part of a trial court's charge, a judgment cannot be permitted to stand when a party is denied proper submission of a valid theory of recovery raised by the pleadings and evidence. *Exxon Corp. v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992). Consequently, this error requires that we reverse the district court's judgment and remand the case for a new trial of Henderson's claims against Old HH. *Id.*

---

[1] Old HH does not argue that the evidence that the house was uninhabitable was legally insufficient to support submission of a question regarding breach of the implied warranty of habitability.

In its motion for rehearing, however, Old HH contends that the trial court's failure to submit a question on the implied warranty of habitability does not constitute harmful error requiring reversal because Henderson presented no evidence at trial that would support an award of any damages on that theory of liability. We disagree. A jury finding that Old HH breached the implied warranty of habitability would entitle Henderson to recover, among other things, "the reasonable expenses of temporary housing reasonably necessary during the repair period." *See* Tex. Prop. Code Ann. § 27.004 (g)(4) (West Supp. 2011). Henderson testified that she rented a house "that was built with the exact same floor plan" as her own house. Evidence admitted at trial demonstrated that Henderson paid $1,695 per month for the first year of the lease, with a twelve month total of $20,340. Rent for this house increased by five percent each year, and Henderson paid rent totalling $21,360 during the second year of the lease, $22,428 during the third year of the lease, and $23,544 during the fourth year of the lease. Old HH contends that this evidence has "no relevance to living expenses for a repair period, since no repair period was ever identified or quantified." Even if the lack of evidence regarding the length of the "repair period" vitiated the evidentiary value of testimony regarding the rent payments, however, Henderson also presented evidence of her moving and storage costs. These costs, which fall under the category of "expenses of temporary housing," would be incurred regardless of the length of time Henderson was required to be absent from her home—i.e., the repair period—and would therefore be recoverable without evidence of what the repair period actually was or should have been. Because Henderson presented some evidence of damages recoverable under the implied warranty of habitability theory of recovery, we cannot conclude that the trial court's erroneous refusal to submit the requested question was harmless.

13

The trial court's error relates only to Henderson's claims against Old HH, and not to any claims she asserted against the Conyerses. Consequently, we reverse only the portions of the judgment adjudicating Henderson's claims against Old HH. Having sustained Henderson's third appellate issue, for which she requested a remand to the district court for a new trial, we need not address either Henderson's remaining issue or the issues presented on appeal by Old HH.

## CONCLUSION

The district court properly awarded the Conyerses attorneys' fees pursuant to the home sale contract between them and Henderson. Henderson does not challenge the district court's judgment that she take nothing by her claims against the Conyerses. Consequently we affirm those portions of the judgment that award the Conyerses attorneys' fees and costs of court. Having concluded that the court erred by refusing to submit a question regarding Old HH's breach of the implied warranty of habitability, we reverse the portions of the district court's judgment adjudicating the claims between Henderson and Old HH and remand those claims to the district court for a new trial.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Henson and Goodwin;
   Concurring and Dissenting Opinion by Justice Goodwin

Affirmed in part; Reversed and Remanded in part on Motion for Rehearing

Filed: December 9, 2011

14