

NUMBER 13-16-00132-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

IN RE CHARLES BUTT, CRAIG BOYAN, CARMEN GELLHAUSEN, AND KEVIN HOLGUIN

On Petition for Writ of Mandamus.

# OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Opinion by Justice Benavides[1]**

Relators, Charles Butt, Craig Boyan, Carmen Gellhausen, and Kevin Holguin, who are corporate officials for H.E.B. Grocery Company, L.P. ("H.E.B."), filed a petition for writ of mandamus in the above cause on February 26, 2016. Relators and H.E.B. are defendants in a premises liability case predicated on a slip-and-fall accident at an H.E.B. grocery store. Through this original proceeding, relators seek to compel the trial court to:

---

[1] *See* TEX. R. APP. P. 47.4 (distinguishing opinions and memorandum opinions); *Id.* R. 52.8(d) ("When denying relief [in an original proceeding], the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case.").

(1) vacate its order denying relators' motion to dismiss under Texas Rule of Civil Procedure 91a; (2) grant their motion to dismiss; and (3) award them their costs and attorney's fees. *See* TEX. R. CIV. P. 91a (providing for the dismissal of "baseless" causes of action).[2] We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Arturo Garcia slipped and fell while shopping at a McAllen-area H.E.B. grocery store. He and his wife, Aurelia, sued H.E.B. for his injuries. In their fourth amended petition, the Garcias complained in two paragraphs of their petition that a wet floor created an unreasonably dangerous condition, that H.E.B. failed to use adequate methods to detect and remove foreign substances on its store floors, and that H.E.B. intentionally breached a duty to preserve the fluid Garcia purportedly slipped on, thereby justifying spoliation sanctions:

> 27. On the occasion in question, H.E.B. owed a duty to H.E.B.'s invitees, including Garcia, reasonably to inspect the store to discover dangerous conditions in the store which could harm H.E.B.'s invitees, including Garcia. H.E.B. breached such duty, by using an approach to inspecting the store which was known to H.E.B. not to identify timely and reliably the presence of foreign materials on the floor of the store. H.E.B. breached such duty, by choosing not to use computerized video surveillance, or a comparably effective and financially feasible alternative means, to inspect the store to identify timely and reliably the presence of foreign materials on the floor of the store. Such breaches of duty by H.E.B. constituted negligence and gross negligence, which proximately caused Garcia's slip/fall incident and Plaintiffs' damages resulting from such incident which have been made subjects of this case.

> 28. On the occasion in question, H.E.B. owed a legal duty to Garcia, to preserve the fluid as evidence, because H.E.B. had reason to believe: (1) that it was reasonably likely that Garcia would assert a claim against H.E.B. for personal injuries, and (2) the fluid could be relevant to such a claim. H.E.B. intentionally breached such duty. H.E.B is therefore subject to the

---

[2] This original proceeding arises from trial court cause number C-5581-13-I in the 398th District Court of Hidalgo County, Texas, and the respondent in this cause is the Honorable Aida Salinas Flores. *See* TEX. R. APP. P. 52.2.

imposition of such sanction as the Court in its discretion determines to be appropriate, which may consist of either of the following sanctions, among others: (1) a ruling that H.E.B. is liable to Garcia, as a matter of law; or (2) an instruction to the jury, that it may assume that the fluid, had it not been destroyed by H.E.B., would have proven H.E.B.'s negligence on the occasion in question.

The Garcias' fourth amended petition also included claims against four apex corporate officials for H.E.B.: Charles Butt, H.E.B.'s chairman and chief executive officer; Craig Boyan, H.E.B.'s president; Carmen Gellhausen, H.E.B.'s "top risk management employee"; and Kevin Holguin, H.E.B.'s "top safety employee." With regard to claims against these individuals, the petition alleged:

29.    On information and belief, Plaintiffs allege that Holguin, Gellhausen, Boyan and Butt, singularly and/or collectively, had control over what was and was not done by H.E.B., to discharge H.E.B.'s duty to its patrons, as described in paragraph 27.    Plaintiffs further allege that Holguin, Gellhausen, Boyan and/or Butt failed to exercise such control with reasonable care, and that such failure constituted negligence and gross negligence which proximately caused Garcia's slip/fall incident and Plaintiffs' damages made subjects of this case.

30.    On information and belief, Plaintiffs allege that Holguin, Gellhausen, Boyan and Butt, singularly and/or collectively, had control over what was and was not done by H.E.B., to discharge H.E.B.'s duty to its patrons, as described in paragraph 28.    Plaintiffs further allege that Holguin, Gellhausen, Boyan and/or Butt failed to exercise such control with reasonable care, and that such failure constituted negligence and gross negligence which proximately caused Garcia's slip/fall incident and Plaintiffs' damages made subjects of this case.

These corporate officials moved to dismiss the claims against them pursuant to Rule 91a of the Texas Rules of Civil Procedure on grounds that the corporate form of H.E.B. insulates them from liability and the Garcias failed to plead any cause of action which would result in personal liability. *See generally id.* The Garcias filed a response to the motion to dismiss and a brief in support of their response. After additional briefing by

3

the parties, the trial court held a hearing on the motion to dismiss. After the hearing, the trial court denied the relators' motion to dismiss.

This original proceeding ensued. By one issue, relators contend that the Garcias' claims that apex corporate officials are individually liable for a slip and fall in a grocery store lacks any basis in law or fact. According to relators, Texas Rule of Civil Procedure 91a mandates dismissal of claims like these and relators lack an appellate remedy for the trial court's denial of their motion to dismiss. This Court requested and received a response to the petition for writ of mandamus from the Garcias. The Garcias argue generally that H.E.B. should be liable for Arturo's fall, and specifically contend that mandamus is premature because they have not "been provided basic information about relators' job duties" and relators should be required to respond to discovery requests before proceeding on a Rule 91a motion to dismiss. The Court has also received a reply to the Garcias' response from the relators.

## II. STANDARD OF REVIEW

"Mandamus relief is proper to correct a clear abuse of discretion when there is no adequate remedy by appeal." *In re Frank Motor Co.*, 361 S.W.3d 628, 630 (Tex. 2012) (orig. proceeding); *see In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 887 (Tex. 2010) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d at 888; *Walker*, 827 S.W.2d at 840. Mandamus will not issue "when the law provides another plain, adequate, and

4

complete remedy." *In re Tex. Dep't of Family & Protective Servs.*, 210 S.W.3d 609, 613 (Tex. 2006) (orig. proceeding) (quoting *In re Prudential*, 148 S.W.3d at 135–36).

The Texas Supreme Court has held that mandamus is available to review a trial court's denial of a motion to dismiss under Texas Rule of Civil Procedure 91a. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding) (per curiam). In that case, the supreme court granted mandamus relief in favor of an insurer where the trial court refused to grant the insurer's Rule 91a motion to dismiss based on the "no direct action" rule. *See id.*; *see, e.g., Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 138 (Tex. 1997) (per curiam) ("In Texas, the general rule . . . is that an injured party cannot sue the tortfeasor's insurer directly until the tortfeasor's liability has been finally determined by agreement or judgment."); *Aviles v. Aguirre*, 292 S.W.3d 648, 649 (Tex. 2009) (per curiam) ("The plaintiffs sued only Dr. Aviles; they could not sue his insurer under the Texas rules barring direct actions."). Balancing the benefits of mandamus review against the detriments, the supreme court stated that it had "previously held that 'mandamus relief is appropriate to 'spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *In re Essex Ins. Co.*, 450 S.W.3d at 528 (quoting *In re John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 523 (Tex. 2010) (orig. proceeding)). The court thus concluded that, "[i]n light of the conflict of interest and prejudice [rationales for the "no direct action rule"], we conclude that mandamus relief is appropriate to spare the parties and the public the time and money spent on fatally flawed proceedings." *Id.*

Rule 91a was promulgated at the behest of the Legislature who "directed that a more determined effort be made to reduce the expense and delay of litigation, while

5

maintaining fairness to litigants." Misc. Docket No. 12-9191, *Adoption of Rules for Dismissals and Expedited Actions*, (Tex. Nov. 13, 2012) (per curiam), available at http://www.txcourts.gov/All_Archived_Documents/SupremeCourt/Administr ativeOrders/miscdocket/12/12919100.pdf. The concern for an expedited proceeding in matters regarding "baseless" causes of action is illustrated by the strict deadlines imposed by Rule 91a. *See* TEX. R. CIV. P. 91a.3 (requiring the Rule 91a motion to dismiss to be filed within sixty days after the first pleading containing the challenged cause of action and the motion to be granted or denied within forty-five days after it is filed); TEX. GOV'T CODE ANN. §22.004(g) (West, Westlaw through 2015 R.S.) ("The rules shall provide that the motion to dismiss shall be granted or denied within 45 days of the filing of the motion to dismiss."). In laying the groundwork for a rule mandating the early dismissal of baseless causes of action, the Legislature has effectively already balanced most of the relevant costs and benefits of an appellate remedy. *Cf. In re McAllen Med. Ctr.*, 275 S.W.3d 458, 466 (Tex. 2008) (orig. proceeding) (concluding that denying mandamus review regarding the expert report requirement in health care liability claims "would defeat everything the Legislature was trying to accomplish"). Stated otherwise, mandamus review of orders denying Rule 91a motions comports with the Legislature's requirement for an early and speedy resolution of baseless claims.

### III. BASELESS CAUSES OF ACTION

In 2013, the Texas Supreme Court adopted Texas Rule of Civil Procedure 91a, which governs the dismissal of baseless causes of action and which provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds that it has
> no basis in law or fact. A cause of action has no basis in the law if the

6

allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

TEX. R. CIV. P. 91a.1. A motion to dismiss must "state that it is made pursuant to this rule, must identify each cause of action to which it is addressed, and must state specifically the reasons the cause of action has no basis in law, no basis in fact, or both." *Id.* R. 91a.2. The rule allows the responding party to either nonsuit or amend the challenged cause of action at least three days before the date of the hearing on the motion to dismiss. *See id.* R. 91a.5(a),(b).[3] The trial court may, but is not required to, conduct an oral hearing on the motion. *See id*. R. 91a.6. Furthermore, "the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by" the rules of civil procedure. *Id.* R. 91a.6; *see also AC Interests L.P. v. Tex. Comm'n on Envtl. Quality*, No. 01-15-00378-CV, 2016 WL 636546, at *1 (Tex. App.—Houston [1st Dist.] Feb. 11, 2016, no pet.) (mem. op).

We perform a de novo review of the trial court's ruling on a Rule 91a motion to dismiss. *See Parkhurst v. Office of Atty. Gen. of Tex.*, 481 S.W.3d 400, 401 (Tex. App.—Amarillo Dec. 8, 2015, no pet.); *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *Dailey v. Thorpe*, 445 S.W.3d 785, 788 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 822 (Tex. App.—Austin 2014, no pet.); *GoDaddy.com, L.L.C. v. Toups*, 429 S.W.3d

---

[3] The Garcias' original petition was filed in September of 2013 against H.E.B. The Garcias added claims against relators in their first amended petition, after which relators filed their original Rule 91a motion to dismiss. The Garcias subsequently amended their petition twice. Relators then filed an amended Rule 91a motion to dismiss and the Garcias amended their petition a final time. This last petition, the fourth amended original petition, is the live pleading under consideration in this proceeding.

7

752, 754 (Tex. App.—Beaumont 2014, pet. denied). Though Rule 91a is not identical to Federal Rule of Civil Procedure 12(b)(6), several Texas Courts of Appeals have interpreted Rule 91a as essentially calling for a Rule 12(b)(6)-type analysis and have relied on case law interpreting Rule 12(b)(6) in applying Rule 91a. *See* FED. R. CIV. P. 12(b)(6); *see, e.g., Vasquez v. Legend Nat. Gas III, L.P.*, No. 04-14-00899-CV, 2016 WL 1729390, at *2 (Tex. App.—San Antonio Apr. 29, 2016, no. pet. h.); *Wooley*, 447 S.W.3d at 76; *GoDaddy.com, L.L.C.*, 429 S.W.3d at 754. We note, however that the federal rules are based on a more stringent pleading standard than the Texas rules, and Rule 91a did not revoke Texas's established "fair notice" pleading standard. *Compare* FED. R. CIV. P. 12(b)(6), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *and Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *with* TEX. R. CIV. P. 45, *Id.* R. 47, *and Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013). In short, "Texas is a notice pleading jurisdiction, and a petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Id.; see also Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982). Accordingly, in conducting our review, we apply the fair notice pleading standard whereby we must construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact. *See Stedman v. Paz*, No. 13-13-00595-CV, 2015 WL 5157598, at *2 (Tex. App.—Corpus Christi Sept. 2, 2015, no pet.); *Wooley*, 447 S.W.3d at 76; *Zheng v. Vacation Network, Inc.*, 468 S.W.3d 180, 183–84 (Tex. App.—Houston [14th Dist.] 2015, pet. denied); *see also Quintanilla v. Trevino*,

8

No. 13-15-00377-CV, 2016 WL 1552025, at *2 (Tex. App.—Corpus Christi Apr. 14, 2016, no. pet. h.) (mem. op.).[4]

## IV. DISCOVERY

We first address the Garcias' contention that relators should be required to respond to additional discovery before further proceeding on the motion to dismiss. The Garcias have propounded requests for disclosure, interrogatories, and requests for production to relators. The relators have answered the requests for disclosures, but have objected to answering the remaining interrogatories and requests for production. The Garcias allege that discovery is necessary to ascertain the scope of the relators' job duties and activities related to customer safety in order to assess "what legal duties, if any, [r]elators owed the Garcias on the occasion in question."

---

[4] When we construe rules of procedure, we apply the same rules of construction that govern the interpretation of statutes. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 579 (Tex. 2012); *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 437 (Tex. 2007) (orig. proceeding); *In re CompleteRx, Ltd.*, 366 S.W.3d 318, 323 (Tex. App.—Tyler 2012, orig. proceeding); *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 681 (Tex. App.—Houston [1st Dist.] 2011, no pet.). The construction of procedural rules is a legal question and is subject to de novo review. *See In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d at 437; *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). Our primary objective is to give effect to the drafter's intent, which we discern from the plain and common meaning of the rule's words. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Thus, we first look to the plain language of the rule and construe it according to its plain or literal meaning. *Ford Motor Co.*, 363 S.W.3d at 579; *In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d at 437; *Assignees of Best Buy v. Combs*, 395 S.W.3d 847, 864–65 (Tex. App.—Austin 2013, pet. denied). We read the rule as a whole to ascertain its intent. *Huston*, 359 S.W.3d at 681; *Tex. Bldg. Owners & Managers Ass'n, Inc. v. Pub. Util. Comm'n of Tex.*, 110 S.W.3d 524, 531 (Tex. App.—Austin 2003, pet. denied). If the rule's language is unambiguous, we must interpret it according to its plain meaning, giving meaning to the language consistent with other provisions in the rules. *See TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439, 441 (Tex. 2011) (addressing statutory construction); *Assignees of Best Buy*, 395 S.W.3d at 864. The Texas Code Construction Act applies to the construction of procedural rules and, among other things, permits our consideration of the object sought to be attained, the circumstances under which the rule was enacted, and the consequences of a particular construction. *See* TEX. GOV'T CODE ANN. §§ 311.002(a)(4), 311.023(1)–(3),(5) (West, Westlaw through 2015 R.S.); *see also Huston*, 359 S.W.3d at 681; *BASF Fina Petrochemicals Ltd. P'ship v. H.B. Zachry Co.*, 168 S.W.3d 867, 871 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). We liberally construe the rules of civil procedure to obtain "just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law" with "as great expedition and dispatch and at the least expense to both the litigants and to the state as may be practicable." TEX. R. CIV. P. 1; *see Huston*, 359 S.W.3d at 681.

We disagree. Rule 91a requires the motion to dismiss to be filed within sixty days of the defendant being served with the pleading containing the challenged cause of action and requires the court to grant or deny the motion within forty-five days after the motion is filed. *See* TEX. R. CIV. P. 91a.3. These deadlines show that Rule 91a is intended to be asserted and determined soon after the filing of the case and before the opportunity for thorough discovery. *See id.* Further, under the express directive of Rule 91a, "the court may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by" the rules of civil procedure. *Id.* R. 91a.6; *see also AC Interests L.P.*, 2016 WL 636546, at *1. Therefore, the relators were not required to respond to additional discovery. *See* TEX. R. CIV. P. 91a.3; *see also Gonzales v. Dallas Cnty. App. Dist.*, No. 05-13-01658-CV, 2015 WL 3866530, at *5 (Tex. App.—Dallas June 23, 2015, no pet.) (mem. op.) (rejecting the contention that the trial court should not have granted a Rule 91a motion to dismiss until the plaintiff had the opportunity to conduct discovery). Accordingly, we turn to our de novo review of the trial court's ruling on the motion to dismiss.

## V. ANALYSIS

Relators contend that the Garcias have not pleaded that relators owe them any independent duties of care "distinct from what the corporation owes." They thus argue that the Garcias' claims should be dismissed as baseless. In contrast, the Garcias argue that the relators want this Court to rule "that the Texas common law provides immunity from liability to any employee, for torts committed by the employee while acting within the course and scope of his or her employment."

10

The existence of a duty is a threshold inquiry in any negligence case. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 223 (Tex. 2002). Whether a duty exists is a question of law for the court. *Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 181 (Tex. 2004); *Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002); *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 351 (Tex. 1995). This determination is made "from the facts surrounding the occurrence in question." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *see Centeq Realty, Inc., v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994) ("Whether a legal duty exists under a set of facts is a question of law.").

In *Leitch v. Hornsby*, the Texas Supreme Court explained when individual liability will be imposed on a corporate officer and when it will not. 935 S.W.2d 114, 117 (Tex. 1996). The supreme court stated the rule as follows: "A corporate officer or agent can be liable to others, including other company employees, for his or her own negligence. However, individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Id.* The Texas Supreme Court concluded that the company's officers were not individually liable for the failure to supply a lifting belt or dolly to the plaintiff, a company employee, who was injured when he lifted a sixty-five-pound reel of cable. *Id.* at 116–18.

In determining that the corporate officers in *Leitch* could not be held individually liable, the supreme court focused on the fact that the corporate employer bore the "nondelegable duty to use ordinary care in providing [the employee] with a safe workplace." *Id.* Because the duty to provide a safe workplace was a "nondelegable duty

11

imposed on, and belonging solely to" the corporate employer, and because the corporate officer being sued for his negligence did not owe the employee this duty, and did not breach any separate duty, the supreme court held that the corporate officer could not be held individually liable for his negligence. *Id.*; *see also Tex. Specialty Trailers, Inc. v. Jackson & Simmen Drilling Co.*, No. 2-07-00228-CV, 2009 WL 2462530, at \*4 (Tex. App.—Fort Worth Aug. 13, 2009, pet. denied) (mem. op.) ("Williams's acts relating to the loading and hauling of the rig were done in his capacity as a corporate officer [and] he was performing duties belonging to Texas Specialty. Accordingly, we conclude that Williams owed no duty and cannot be personally liable for negligence."); *Ching Enters., Inc. v. Barahona*, No. 01-07-00454-CV, 2008 WL 4006758, at \*9 (Tex. App.—Houston [1st Dist.] Aug. 28, 2008, no pet.) (mem. op.) (concluding that personal liability could not be imposed on a corporate officer where the company and officer "committed the identical negligent acts and omissions," there were no allegations regarding any "independent duty of care," and personal liability could not be sustained on the basis of "participation" in tortious conduct).

In 2005, the Texas Supreme Court extended the *Leitch* rule to premises liability cases. *See Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005). In *Tri*, the victims of a sexual assault committed by a Buddhist monk brought an action for negligence and other claims against the monk, the corporation that owned the temple where the assault occurred, an officer of the corporation, and others. *See id.* at 554. In summarizing its opinion in *Leitch*, the court explained:

> The defendants are correct that a negligence finding against an individual does not automatically result in individual liability when the individual was acting as the agent or employee of a corporation. Corporations can, of course, only act through individuals. We explained in *Leitch v. Hornsby*

12

when individual liability will be imposed and when it will not. "[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty." We gave as an example an agent whose negligence caused an automobile collision while the agent was driving in the course and scope of employment. An agent, in his individual capacity, owes a duty to the public to drive with reasonable care. Therefore, the individual is liable for his or her own negligence, and the employer is also vicariously liable. The situation in *Leitch*, however, was different. The corporate agents were not individually liable even though the jury had found them and their employer negligent. In that case, the plaintiff Hornsby was injured when he lifted a sixty-pound reel of cable. There was evidence that his employer, through its officers and employees, had declined to provide Hornsby a lifting belt or dolly. We held that the actions or inactions of the individuals were actions or inactions "within their capacities as officers" of Hornsby's corporate employer and that the individuals "had no individual duty as corporate officers to provide Hornsby with a safe workplace." The individuals were not liable for their negligence because they "did not breach any separate duty" to Hornsby. Only their corporate employer was liable for their negligence.

*Id.* at 562–63 (citations omitted). In *Tri*, the plaintiffs alleged that the trial court erred in failing to render judgment individually against the officer of the corporation. *Id.* However, the supreme court could not determine whether the corporate officer breached a duty that he owed to the plaintiffs separate from the duty his employer, the corporation, owed to the plaintiffs because there was no record of what transpired at trial. *See id.* at 563.[5]

Following *Leitch* and *Tri*, the Fourteenth Court of Appeals affirmed a no-evidence summary judgment rendered in favor of the president and sole shareholder of a corporation in a wrongful death suit based on a premises liability theory. *See Pico v. Capriccio Italian Rest., Inc.*, 209 S.W.3d 902, 904 (Tex. App.—Houston [14th Dist.] 2006, no pet.). In *Pico*, the family of an individual who died from an assault that allegedly took

---

[5] The *Tri* decision effectively abrogates previous decisions holding that store managers, by virtue of their mere employment as such, have individual liability to invitees. *See, e.g., Wal–Mart Stores, Inc. v. Deggs*, 971 S.W.2d 72–75 (Tex. App.—Beaumont 1996), *rev'd on other grounds*, 968 S.W.2d 354 (Tex. 1998); *S.H. Kress Co. v. Selph*, 250 S.W.2d 883, 893 (Tex. Civ. App.—Beaumont 1952, writ ref'd n.r.e); *Valdes v. Wal–Mart Stores, Inc.*, 158 F.3d 584, at *5 n.6 (5th Cir.1998).

13

place on the premises of a nightclub brought suit against the nightclub and its president alleging that they were negligent in failing to take reasonable measures to ensure the decedent's safety as a business invitee of the nightclub. *See id.* at 904–05. According to the Fourteenth Court, "[u]nless alter ego is established, a corporate officer or agent may be individually liable to others for his own negligence within the employment context only when he owes an independent duty of reasonable care to the injured party apart from the employer's duty." *Id.* at 912 (citing *Tri*, 162 S.W.3d at 562, *Leitch*, 935 S.W.2d at 117; *Palmer v. Wal–Mart Stores, Inc.*, 65 F.Supp.2d 564, 567 (S.D. Tex. 1999)). The court stated that the plaintiffs failed to point to any evidence supporting their contention that the president owed the decedent any independent duty, apart from the duty allegedly owed by the nightclub, to ensure the decedent's safety. *Id.* Instead, the plaintiffs consistently referred to the corporation and president collectively when presenting reasons that they allegedly owed a duty to the decedent. *See id.* The court thus held that the trial court properly granted the no-evidence summary judgment in the president's favor on the negligence claim. *Id.*[6]

---

[6] Numerous federal district courts have struggled with applying *Leitch* and *Tri* to the issue of joinder when a corporate defendant is joined with a store manager. *See, e.g., Champion v. Wal-Mart Stores of Tex., L.L.C.*, No. 5:16-CV-112-DAE, 2016 WL 1226942, at *3 (W.D. Tex. Mar. 24, 2016) (order) (discussing cases). After summarizing the sometimes conflicting decisions, the court held that a "single governing principle" in these cases provides:

> If the pleadings allege the store manager or employee played a personal and active role in creating the dangerous condition at issue, then an independent duty of care existed, recovery was possible, and remand was appropriate. Where the pleadings allege the store manager was acting in his or her corporate capacity and was not personally involved in creating the condition, then the store manager owed no separate duty of care, recovery was not possible, and remand was inappropriate. This distinction comports well with traditional understandings of tort liability and nonfeasance. *Buchanan v. Rose*, 159 S.W.2d 109, 391–92 (Tex. 1942) ("[I]f a party negligently creates a dangerous situation it then becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby."); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000) ("Texas law generally imposes no duty to take action to prevent harm to others absent certain special relationships or circumstances."); RESTATEMENT (SECOND) OF TORTS § 314 (1965)

Based on the foregoing, it is clear that individual liability arises for a corporate employee or officer only when the officer or employee owes an independent duty of reasonable care to the injured party apart from the employer's duty.  *See Tri,* 162 S.W.3d at 562; *Leitch*, 935 S.W.2d at 117.  We note that such independent duties of reasonable care may arise in different contexts.  Specifically, for instance, it is a longstanding rule in Texas that "a corporate agent is personally liable for his own fraudulent or tortious acts." *Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002); *see Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 359 (Tex. App.—Houston [1st Dist.] 2012, no pet.).  Thus, if a corporate agent directs or participates in a tortious act during his employment, he or she faces personal liability for the tortious act.  *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984); *see Khan*, 371 S.W.3d at 359.  Further, independent duties may arise when the officer or employee personally creates a dangerous situation that causes injury.  *See, e.g., San Benito Bank & Trust Co. v. Landair Travels*, 31 S.W.3d 312, 319 (Tex. App.—Corpus Christi 2000, no pet.).

("The fact that [an] actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.").

*Id.*; *see also Lyle v. 24 Hour Fitness, USA, Inc.*, No. A-14-CA-300 LY, 2014 WL 5094126, at *4 (W.D. Tex. Oct. 10, 2014) ("In all of the cases in which remand was granted, the courts pointed to the fact that the pleadings alleged the store manager or agent played a personal role in creating the dangerous condition at issue, whereas in those in which remand was denied none of the managers were alleged to have had any personal role in creating the danger.").  Other reported decisions comport with this analysis.  *See, e.g., Solis v. Wal-Mart Stores East, L.P.*, 617 F.Supp.2d 476, 481 (S.D. Tex. 2008) ("After *Tri*, there is no reasonable possibility that a plaintiff can bring a claim under Texas law against a store manager for duties performed within the scope of the employee's duties."); *Bourne v. Wal-Mart Stores, Inc.*, 582 F.Supp. 828 (E.D. Tex. 2008) ("Thus, under the current state of the law in Texas, an employee may not be held individually liable unless she breaches an independent duty of care she owed to the injured party separate from her employer's duty."); *Guzman v. Cordero*, 481 F. Supp. 2d 787, 790 (W.D. Tex. 2007) ("Unlike the individual defendants in *Leitch*, Cordero was directly and personally involved in conduct that allegedly caused Plaintiff's injuries because Cordero actually performed the services in question."); *Torres v. Trans Health Mgmt., Inc.*, 509 F.Supp.2d 628, 632 (W. D. Tex. 2006) (holding that because plaintiff employee alleged that fellow employee and corporate employer committed identical negligent acts related to workplace safety and because "the duty to use ordinary care in providing employees with a safe workplace is non-delegable," Texas law precluded a finding of individual liability against the fellow corporate employee).

15

The question for this Court is whether relators had an independent duty, separate and apart from H.E.B.'s duty, to the Garcias as invitees of H.E.B.'s McAllen-area store. As stated previously, we determine this issue based "solely" on the Garcias' fourth amended petition, and we do not have in this case any pleading exhibits permitted by the rules of civil procedure. TEX. R. CIV. P. 91a.6; *see also AC Interests L.P.*, 2016 WL 636546, at *1. The Garcias allege that "[o]n information and belief," relators "singularly and/or collectively, had control over what was and was not done by H.E.B., to discharge H.E.B.'s duty to its patrons" as described in the allegations against H.E.B.

Examining the Garcias' fourth amended petition liberally, the petition does not allege any facts that would support a conclusion that relators possessed any duties to the Garcias separate and apart from those duties owed to the Garcias by H.E.B. The Garcias have not alleged that relators committed tortious or fraudulent acts, or that they personally created the allegedly dangerous condition at issue in this case—a wet floor. The allegations against the individual relators, Butt, Boyan, Gellhausen, and Holguin, are identical to each other and are also identical to the allegations against H.E.B. Such undifferentiated allegations are insufficient to support a conclusion that relators individually owed the Garcias an independent duty of care either by virtue of their positions as apex corporate officials or as a result of their own actions.

As previously stated, liability cannot be imposed on employees where the employer and the employees committed the identical negligent acts or omissions. *See Tri,* 162 S.W.3d at 562; *Leitch*, 935 S.W.2d at 117; *Pico*, 209 S.W.3d at 904. We conclude that the Garcias' allegations, taken as true, together with inferences reasonably drawn from them, do not present a cause of action against relators that would entitle the Garcias

to the relief sought on their premises liability claims against relators. *See* TEX. R. CIV. P. 91a. Accordingly, we conclude that the trial court erred in denying relator's Rule 91a motion to dismiss. We further conclude that relators lack an adequate remedy by appeal to address this error. *See In re Essex Ins. Co.*, 450 S.W.3d at 528. Under the cases decided by the Texas Supreme Court, there is a clear distinction between the liability attributed to individuals, whether employees or corporate agents, and the liability attributed to an employer or business entity. *See Tri,* 162 S.W.3d at 562; *Leitch*, 935 S.W.2d at 117. In light of this clear distinction and the well-developed body of law regarding individual and corporate liability, relators lack an adequate remedy by appeal. *See, e.g., In re Alcatel USA, Inc.*, 11 S.W.3d 173, 181 (Tex. 2000) (Enoch, J., dissenting) (observing the "potential for harassment that high-level corporate officials face when a corporation is routinely subjected to litigation").

## VI. ATTORNEY'S FEES

Relators contend that the trial court must award them their attorney's fees and costs. Under Texas law, attorney's fees are not recoverable unless specifically provided by contract or statute. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). In this case, Rule 91a expressly provides:

> **Award of Costs and Attorney Fees Required**. Except in an action by or against a governmental entity or a public official acting in his or her official capacity or under color of law, the court must award the prevailing party on the motion all costs and reasonable and necessary attorney fees incurred with respect to the challenged cause of action in the trial court. The court must consider evidence regarding costs and fees in determining the award.

TEX. R. CIV. P. 91a.7; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 30.021 (West, Westlaw through 2015 R.S.) (stating that the trial court "shall award costs and reasonable and

17

necessary attorney's fees to the prevailing party" for the granting or denial of a motion to dismiss).

"Undisputedly, the rule mandates an award of attorney's fees to a prevailing party, and the award is not discretionary." *Zheng*, 468 S.W.3d at 187; *see Guillory v. Seaton, L.L.C.*, 470 S.W.3d 237, 243–44 (Tex. App.—Houston [1st Dist.] 2015, pet. filed) (stating that the award of attorney's fees under Rule 91a.7 is based upon which party prevails on the motion); *see also Drake v. Chase Bank*, No. 02–13–00340–CV, 2014 WL 6493411, at *2 (Tex. App.—Fort Worth Nov. 20, 2014, no pet.) (mem. op.). Accordingly, the relators are entitled to an award of costs and attorney's fees because they are the prevailing parties with regard to their motion to dismiss. *See* TEX. R. CIV. P. 91a.7; *Zheng,* 468 S.W.3d at 187. Upon consideration of this matter in the trial court, the trial court shall convene a hearing in order to consider evidence regarding costs and fees in determining the amount of the award to issue in favor of relators as the prevailing parties. *See* TEX. R. CIV. P. 91a.7.

## VII. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that relators have met their burden to obtain mandamus relief. Accordingly, we lift the stay previously imposed in this cause. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We conditionally grant the petition for writ of mandamus and we direct the trial court to: (1) withdraw its order denying the relators' motion to dismiss; (2) grant the motion to dismiss; and (3) award relators their costs and attorney's fees after conducting a hearing to consider

18

evidence on these matters.  Our writ will issue only if the trial court fails to act in accordance with this opinion.

GINA M. BENAVIDES,
Justice

Delivered and filed the
9th day of May, 2016.