# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00099-CV

---

**PBAC 507 Holdings, LLC, Appellant**

**v.**

**ESA P Portfolio, LLC, Appellee**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-006521
### THE HONORABLE AURORA MARTINEZ-JONES, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

PBAC 507 Holdings, LLC appeals from the trial court's order granting appellee ESA P Portfolio, LLC's Rule 91a motion to dismiss and dismissing all of PBAC's claims against ESA. Furthermore, PBAC contends that if we reverse the trial court's order granting ESA's Rule 91a motion, the trial court's subsequent orders that award ESA attorneys' fees in connection with ESA's Rule 91a motion and grant ESA's motion for summary judgment on its indemnification counterclaim and award it $329,364 in attorneys' fees must also be reversed. For the reasons explained below, we affirm the trial court's judgment.

## BACKGROUND[1]

ESA owned and operated a hotel located at 507 South 1st Street, Austin, Texas ("Austin Property"). After ESA had entered into an agreement to sell the hotel (and other properties not at issue in this case) to 3423 Holdings, LLC, an entity not formally affiliated with PBAC, 3423 Holdings assigned the right to purchase the hotel to PBAC on June 23, 2021. Subsequently, PBAC requested five separate extensions of the closing date for various reasons, all of which were granted by ESA. On October 5, 2021, ESA and PBAC entered into the "Seventh Amendment to Agreement of Purchase and Sale," which set the closing date for October 29, 2021. PBAC alleges that ESA represented to PBAC "that it would not extend closing beyond October 29, 2021 under any circumstance."

PBAC further alleges that although it was ready, willing, and able to close on October 29, 2021, just a few days before it was set to close, it learned that ESA had wrongfully closed "bank accounts that were set up for [PBAC's] use in order to continue operating" the hotel after the sale, thus making it impossible for PBAC to close on the set date. PBAC alleges that it "repeatedly implored ESA to extend the closing," but ESA refused to do so. PBAC also alleges that ESA subsequently represented to PBAC that unless the closing occurred on October 29, 2021, ESA would not sell the Austin Property to anyone because one of ESA's investors had issued a moratorium against further hotel sales "for the time being."

Because none of the relevant agreements obligated ESA to further extend the closing, PBAC would lose its $2,050,000 in earnest money if the transaction failed to close on

---

[1] The facts contained in this section are taken from PBAC's Second Amended Original Petition (its live pleading) and the exhibits attached to it, except where noted.

October 29, 2021. Instead, PBAC, ESA, and a third company, Broadview Properties LLC, executed an Amendment and Termination Agreement on October 29, 2021 ("Termination Agreement"). The Termination Agreement recites that "PBAC desires to assigns [sic] its right to purchase the Austin Property . . . to Broadview," and that "[n]otwithstanding anything contained herein to the contrary, Broadview has agreed to purchase the Austin Property . . . , and [ESA] has entered into this Agreement, solely as an accommodation to and at the request of PBAC."

As part of the Termination Agreement, PBAC assigned to Broadview its right to purchase the property in exchange for a $500,000 "Consideration and Release Fee." In addition, ESA consented to PBAC's assignment to Broadview of PBAC's right to purchase the Austin Property, and PBAC consented to ESA and Broadview's entering into a new contract for ESA's sale of the Austin Property to Broadview. ESA also agreed to return PBAC's $2,050,000 earnest money. PBAC also provided broad releases to ESA and Broadview for all claims and agreed to indemnify them for any claims relating to the original purchase agreement, the Termination Agreement, the new contract between ESA and Broadview, and "any other agreement, arrangement, or understanding alleged to have been made by any of [PBAC, ESA, and Broadview]."

Two business days later (and one day after receiving its money), on November 2, PBAC sent formal notice to ESA and Broadview that it had executed the Termination Agreement based on the allegedly fraudulent misrepresentation that Broadview would close on the Austin Property on the same day that the Termination Agreement was signed, October 29. In addition, PBAC asserted in the notice letter that ESA failed to perform certain "condition precedent prerequisites to closing on the Property pursuant to Section 9.1 of the agreement," including "the requirement that certain banking accounts be available and other requirements set forth in the

3

agreement." PBAC stated in the letter that if ESA had disclosed these failures, PBAC would have invoked its contractual rights to provide notice and make a demand for cure, and the closing date would have been automatically extended for at least five days in accordance with the purchase agreement's cure provisions.[2] PBAC stated that it sought specific performance and informed ESA and Broadview that unless they agreed to immediately sell the Austin Property to PBAC, PBAC would file a lis pendens and lawsuit. The next day, PBAC sent a second letter to ESA, providing formal notice that ESA had failed to perform certain conditions precedent and demanding that ESA cure its failure to perform within five days; it further informed ESA that PBAC was ready, willing, and able to close the transaction immediately and that it was willing to waive ESA's defaults if ESA contended that its failure to satisfy its closing obligations was not curable. PBAC also informed ESA that it had filed a lawsuit and a notice of lis pendens against the Austin Property in the Travis County real property records.

PBAC sued both ESA and Broadview. PBAC's live petition alleges 11 claims against ESA: (1) breach of contract, (2) promissory estoppel, (3) declaratory relief, (4) repudiation and rescission of Termination Agreement, (5) real-estate fraud, (6) statutory fraud, (7) common-law fraud, (8) fraudulent and negligent misrepresentations, (9) conspiracy, (10) tortious interference, and (11) disgorgement.[3] ESA answered, denied all allegations, and pleaded

---

[2] Among other things, Section 9.1 of the purchase agreement provided that if ESA failed to comply with any condition in the agreement for the benefit of PBAC before closing, and if the condition were curable, ESA would have five calendar days after written notice from PBAC to cure. The five-day period would automatically extend the closing date to the expiration of the five-day period.

[3] In its original and first amended original petition, PBAC had not alleged negligent misrepresentation. In its live petition, it added additional factual allegations that (1) it learned a few days before the sale was set to close about ESA's closure of the operating bank accounts, and (2) if ESA had disclosed its failure to perform other (unspecified) requirements set forth in the

4

counterclaims against PBAC for breach of contract based on the Termination Agreement, and sought indemnity from PBAC under that agreement, and alternatively, pleaded a claim for money had and received, seeking return of the money that it paid to PBAC as consideration for the Termination Agreement.

ESA also filed a motion to expunge the notice of lis pendens, which the trial court granted because PBAC's "lawsuit does not contain a real property claim, or, to the extent that it could be read to, [PBAC] failed to establish by a preponderance of the evidence the probable validity of any real property claim." ESA then filed a Rule 91a motion to dismiss, asserting that all of PBAC's claims had no basis in law or fact, or both, depending on the claim. Broadview also filed a separate Rule 91a motion to dismiss.

After conducting separate hearings on ESA's and Broadview's Rule 91a motions, on May 9, 2022, the trial court granted both ESA's and Broadview's motions in the same order. The trial court later granted ESA's motion for a Rule 91a attorneys' fees award and its motion for summary judgment on its counterclaim for indemnification. In addition, the trial court granted ESA's motion to sever PBAC's claims against it from the claims against Broadview. In the final judgment issued in the severed cause number on January 13, 2023, the trial court ordered that ESA shall recover $329,264.37 plus interest from PBAC, with additional conditional fees awarded to ESA in the event of an unsuccessful appeal by PBAC, and that PBAC take nothing on its claims against ESA. This appeal followed.

---

agreement, PBAC would have invoked its right to provide notice and demand for cure, automatically extending the transaction's closing date for at least five days.

## STANDARD OF REVIEW & APPLICABLE LAW

Titled "Dismissal of Baseless Causes of Action," Rule 91a of the Texas Rules of Civil Procedure reads in relevant part:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

Tex R. Civ. P. 91a.1. Rule 91a states that the trial court "may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits permitted by Rule 59." *Id.* R. 91a.6. These include "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense . . . ." *Id.* R. 59.

We review the trial court's ruling on a Rule 91a motion to dismiss de novo "because the availability of a remedy under the facts alleged is a question of law and the rule's factual-plausibility standard is akin to a legal-sufficiency review." *City of Dallas v. Sanchez*, 494 S.W.3d 722, 724 (Tex. 2016) (per curiam) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); also citing *cf. Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 768 (Tex. 2011) (application of law to undisputed facts is reviewed de novo); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) ("[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not.")). We apply the Texas fair-notice pleading standard to determine whether the allegations of the petition are sufficient to allege a cause of action. *In re Butt*, 495 S.W.3d 455, 461 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding); *see Roark v.*

6

*Allen,* 633 S.W.2d 804, 810 (Tex. 1982) ("A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim."). In conducting our review, we "construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings to determine if the cause of action has a basis in law or fact." *In re Butt*, 495 S.W.3d at 463; *Koenig v. Blaylock*, 497 S.W.3d 595, 599 (Tex. App.—Austin 2016, no pet.); *Wooley*, 447 S.W.3d at 76. We need not accept as true any of the pleader's legal conclusions. *See Stone v. Randolph-Brooks Fed. Credit Union*, No. 03-21-00422-CV, 2023 WL 2394297, at *2 (Tex. App.—Austin Mar. 8, 2023, pet. denied) (mem. op.). As stated above, the no-basis-in-fact prong of Rule 91a relates to the believability of the facts alleged. *See Davis v. Homeowners of Am. Ins. Co.*, --- S.W.3d ---, No. 05-21-00092-CV, 2023 WL 3735115, at *2 (Tex. App.—Dallas May 31, 2023, no pet.). For the no-basis-in-law prong, Texas courts typically find that dismissal is appropriate in two circumstances: (1) where the plaintiff fails to plead a legally cognizable cause of action or (2) where the petition alleges facts that defeat the plaintiff's own claims. *Id.* at *4.

**ANALYSIS**

On appeal, PBAC challenges the dismissal of its claims in three issues. In its first two issues, it argues that the trial court erred in granting ESA's Rule 91a Motion to Dismiss for two reasons: (1) the trial court erroneously considered Broadview's Rule 91a motion to dismiss in deciding ESA's Rule 91a motion to dismiss; and (2) PBAC's Second Amended Original Petition, which it filed after ESA filed its Rule 91a motion to dismiss, addressed the pleading deficiencies complained of in the motion and sufficiently alleged a legal and factual basis for its claims. In its

third issue, PBAC asserts that if we reverse the trial court's order granting the motion to dismiss, we must also reverse its orders awarding attorneys' fees to ESA. We address each issue in turn.

## I. The trial court did not erroneously consider extrinsic evidence in deciding ESA's Rule 91a Motion to Dismiss.

In its first issue, PBAC argues that because the trial court granted ESA's and Broadview's motions to dismiss in the same order and referred to them collectively as "the Motions" when stating that they should be granted, the trial court improperly considered Broadview's separate Rule 91a motion when deciding ESA's motion. Our examination of the record reveals no indication that the trial court took such action. Nothing in the order indicates that the trial court considered Broadview's motion when deciding ESA's motion, or vice versa. The record contains two separate notices of hearing for the motions, one for Broadview's motion on February 24, 2022, and one for ESA's motion on March 1, 2022. The order confirms that the court "heard and considered" the motions on those two different dates. The court separately addressed each motion in the order, stating that each motion was granted in its entirety. PBAC has not pointed to any arguments in Broadview's motion that were not made by ESA but that the trial court would have necessarily considered to grant ESA's motion.[4] We conclude that PBAC has not established that the trial court considered Broadview's motion when deciding ESA's motion.

---

[4] Broadview's motion to dismiss is not included in the record for this appeal. Thus, we do not consider the arguments presented in it in our analysis of the trial court's grant of ESA's motion. However, we reviewed Broadview's motion in connection with our disposition of Broadview's appeal, *see PBAC 507 Holdings, LLC v. Broadview Props., LLC*, No. 03-23-00411-CV, in which we are contemporaneously issuing an opinion. We note only that the Broadview motion was filed in the trial court and contains similar arguments to ESA's motion. *See* Tex. R. Evid. 201 (allowing court to take judicial notice of its own records).

Moreover, even if the trial court had considered Broadview's legal analysis of PBAC's claims when deciding ESA's motion, PBAC has not cited any authority that supports its assertion that the trial court would have erred by doing so.[5] Rule 91a provides that "the court may not consider *evidence* in ruling on the motion and must decide the motion based solely on the pleading of the cause of action." Tex. R. Civ. P. 91a.6 (emphasis added). The Texas Supreme Court has explained that the Rule "limits the scope of a court's factual, but not legal inquiry," limiting the factual inquiry to the plaintiff's pleadings, but not the legal inquiry. *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 655-56 (Tex. 2020). For example, the trial court can look outside the plaintiff's pleadings to consider the legal theories and arguments presented in a Rule 91a motion or a hearing on the motion. *Id.* at 655 ("The rule does not limit the universe of legal theories by which the movant may show that the claimant is not entitled to relief based on the facts as alleged."). We decline to conclude on this record that any consideration by the trial court of legal arguments raised in Broadview's motion to dismiss when deciding ESA's motion to dismiss would constitute reversible error. We overrule PBAC's first issue.

## II. PBAC's Second Amended Original Petition did not sufficiently allege a legal or factual basis for its fraud claims.

In its second issue, PBAC argues that the causes of action alleged in its live pleading at the time of the hearing on ESA's motion have a basis in law and fact. When ESA filed its Rule 91a motion, PBAC's First Amended Original Petition was the live pleading. Eleven days prior to the hearing, PBAC filed its current live petition, its Second Amended Original Petition, which

---

[5] PBAC does not argue that Broadview's motion asserted any facts not contained in PBAC's pleadings.

9

contained additional factual allegations to support its claims. Although ESA had the option under Rule 91a.5(b) to withdraw or amend its motion, it chose not to do so and continued with its initial motion.

ESA argued in its Rule 91a motion to dismiss that PBAC alleges five fraud-based claims "to circumvent the otherwise conclusive legal impact of [the Termination] [A]greement effectuated 'solely as an accommodation to and at the request of PBAC.'" ESA asserted that "PBAC's fraud claims rest upon an unsupportable underlying premise: That it had a right to further extend the closing date to acquire the properties in question." Because PBAC alleges that it would have received an extension from ESA and closed but for ESA's alleged fraud, ESA argues that PBAC must be able to show a right to extend closing to state a cause of action. ESA contends that without such a right, PBAC's fraud claims fail, and the failure of those claims renders PBAC's other claims without a basis in fact or law.

PBAC contends that it added more factual allegations to its Second Amended Original Petition and that those allegations addressed the two primary pleading deficiencies complained of in ESA's motion. First, PBAC contends that it addressed ESA's contention that PBAC was unable to close on the Austin Property purchase on October 29, asserting that ESA argued that PBAC could not afford to close.[6] In the First Amended Original Petition, PBAC did not explain why it could not close on October 29 and instead made efforts to extend the date of closing that ESA rebuffed, but in the Second Amended Original Petition it stated it "was ready,

---

[6] Although it might be reasonable to infer that PBAC could not afford to close on the Austin Property based on the five previous extensions of the closing date that it had requested and received, ESA did not argue in the motion to dismiss that PBAC could not afford to close. Instead, ESA argued that PBAC's five fraud-based claims lack a basis in law because those claims rest on PBAC's unsupported premise that it had a right to further extend the closing date, and all of its other claims fail if the fraud claims fail.

10

willing, and able to close on October 29, 2021. However, just a few days before it was set to close, [PBAC] learned ESA had wrongfully orchestrated to close [PBAC's] bank accounts that were set up for [PBAC's] use in order to continue operating the business upon closing [of the Austin Property sale]." PBAC asserted that this action by ESA made it impossible for PBAC to close.

Second, PBAC argues that it addressed ESA's contention that PBAC did not have a right to extend the closing on the Austin Property past October 29 with its added allegations that ESA failed to perform conditions precedent to closing under Section 9.1 of the Austin Property purchase agreement, "including, but not limited to, the requirement that certain banking accounts be available and other requirements set forth in the agreement." PBAC alleged that "[h]ad ESA disclosed these failures, [PBAC] would have invoked its contractual rights to provide notice and demand for cure, which would have automatically extended the closing date for at least five (5) days, rather than terminate the agreement." PBAC argues that if we take these factual allegations as true, we must conclude that the trial court erred because its petition sufficiently alleges a basis in law and fact for its fraud claims. We disagree.

A.     **PBAC did not sufficiently plead its fraud claims.**

Both parties focus on whether PBAC sufficiently alleges a basis in law and fact for its fraud claims presumably because unless PBAC can show that it was fraudulently induced to enter into the Termination Agreement, the broad release of all claims relating to the parties' transaction in that Agreement precludes PBAC from having a basis in law for its other claims. To summarize PBAC's allegations, PBAC alleges that ESA and Broadview fraudulently induced PBAC to assign its purchase rights to Broadview (1) by misrepresenting that ESA would not extend the closing date past October 29, 2021, for any party under any circumstances and that it

11

would close on the sale of the Austin Property with Broadview on October 29, if PBAC did not close on October 29, and (2) by failing to disclose that ESA had not performed certain conditions precedent requisite to closing under the original contract. Allegedly, had PBAC known that ESA and Broadview would not close on October 29 and that ESA did not perform its contractual obligations, PBAC would not have signed the Termination Agreement. Instead, PBAC argues that it would have exercised its right under the original contract to automatically extend the closing date by five days due to ESA's alleged breaches, demanded that ESA cure them, and then closed the deal.

PBAC's live petition alleges five fraud-based causes of action: (1) repudiation and rescission of the Termination Agreement based on fraudulent inducement, (2) real-estate fraud, (3) statutory fraud, (4) common-law fraud, and (5) fraudulent and negligent misrepresentation. To allege a legal and factual basis for its fraud claims, PBAC had to sufficiently plead facts to support each element of fraud, which generally are (1) that a material misrepresentation was made; (2) the speaker knew it was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the speaker made the representation with the intent to induce the other party to act upon it; and (4) the other party actually and justifiably relied on the representation and suffered injury as a result.[7] *See Mercedes-Benz USA v. Carduco, Inc.*, 583 S.W.3d 553, 557-58 (Tex. 2019);

---

[7] The elements for all of PBAC's fraud-based claims are very similar. All the claims require that a material misrepresentation is made and that the other party relies on that misrepresentation to its detriment. *See JPMorgan Chase Bank v. Orca Assets, G.P.*, 546 S.W.3d 648, 653-54 (Tex. 2018) (fraud and negligent misrepresentation; for negligent misrepresentation, "a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest"); *Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 413, 420 (Tex. App.—Houston [14th Dist.] 2021) (fraud and fraudulent inducement, negligent misrepresentation), *aff'd*, 671 S.W.3d 907, 910 (Tex. 2023); *Robbins v. Capozzi*, 100 S.W.3d 18, 23, 26 (Tex. App.—Tyler 2002, no pet.) (statutory, real-estate, and common-law fraud).

*JPMorgan Chase Bank v. Orca Assets, G.P.*, 546 S.W.3d 648, 653 (Tex. 2018). ESA asserted in its motion to dismiss that PBAC's fraud claims were not viable for several reasons, including that the Termination Agreement contained express language stating that it was entered into at PBAC's request to accommodate it, the purported misrepresentations were not material, and PBAC could not have justifiably relied upon ESA's alleged representation that ESA would close with Broadview on the same day that PBAC assigned the right to purchase the Austin Property to Broadview.[8] We first consider whether PBAC sufficiently alleged facts to support the element of a material misrepresentation.

### 1. PBAC failed to plead sufficient facts to demonstrate that a material misrepresentation was made.

In its petition, PBAC pleads that ESA wrongfully closed PBAC's bank accounts "to complete a back door sale of the Property to Broadview," and then "ESA represented to [PBAC] that it would not extend closing beyond October 29, 2021 under *any* circumstance."

---

[8] ESA argues on appeal that PBAC failed to satisfy its burden on appeal to address every ground in ESA's motion to dismiss that the trial court could have relied on to grant the motion, and thus, we should uphold the trial court's dismissal on the unchallenged grounds. *See Longhorn Creek Ltd. v. Gardens of Connemara Ltd.*, 686 S.W.3d 418, 425 (Tex. App.—Dallas 2024, pet. filed) ("When an order granting a rule 91a motion to dismiss does not specify the grounds for dismissal, an appellant seeking reversal of a rule 91a dismissal must negate the validity of each ground on which the trial court could have relied in granting the dismissal."). In its appellant's brief, PBAC only addresses whether it had a right to an extension of the closing date because of the alleged failure by ESA to comply with conditions precedent by wrongfully closing PBAC's bank accounts and its alleged failure to disclose that noncompliance. ESA urges that the trial court could have granted the motion based solely on the fact that it determined that PBAC's fraud claims were not viable for the identified reasons or because of the broad release in the Termination Agreement. However, because PBAC also pleaded the wrongful closure of the bank accounts as part of its claim that it was fraudulently induced into entering the Termination Agreement and argued that on appeal, we will analyze whether the allegations in its live petition supply a sufficient basis in law to support its fraud claims.

PBAC further alleges that ESA represented to PBAC that "ESA would close on the sale of the Property with Broadview on October 29, 2021, should [PBAC] not close on October 29, 2021." PBAC alleges that absent these misrepresentations, it would not have entered into the Termination Agreement. It further alleges it discovered after the execution of the Termination Agreement that the October 29 closing date was extended for Broadview, that Broadview and ESA did not close on the Property purchase that day, and that ESA failed to disclose that it had not fulfilled certain of its closing obligations to PBAC, specifically that it had closed certain required bank accounts that had been set up for PBAC.[9]

As an initial matter, there is no basis in fact or law for PBAC's allegation that had ESA disclosed its alleged failure to comply with conditions precedent, PBAC would have demanded that ESA cure and extend the closing date, because it admits elsewhere in the petition that "a few days before it was set to close, [PBAC] learned ESA had wrongfully orchestrated to close [PBAC's] bank accounts." Because PBAC was aware of this alleged failure of conditions precedent days before the closing date, it had the opportunity to exercise its right to seek to have ESA cure the failure within five calendar days and automatically extend the closing date before it executed the Termination Agreement. Thus, this allegation does not provide a factual or legal basis to support PBAC's fraud claims.

---

[9] To the extent that PBAC alleges that ESA failed to disclose that it had failed to comply with other unspecified conditions precedent, those unspecified conditions do not provide a sufficient basis in fact to support PBAC's allegation that had it known of those failures to comply, it would have invoked its contractual right to demand that ESA cure the issue, thus extending the closing date, given that the Section 9.1 of the purchase agreement allowed a party to waive the failure of conditions precedent and close on time and that PBAC also alleged that it was ready, willing, and able to close until it found out about the closure of the bank accounts.

Taking as true PBAC's allegations that ESA misrepresented to PBAC that it would not extend the closing date beyond October 29 under any circumstances for any party and that ESA and Broadview would close on the Property purchase on October 29, we cannot conclude that these are material misrepresentations. A representation is material if "a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

Here, PBAC alleges that because it would lose its earnest money if it failed to close on October 29 and ESA had made closing the deal impossible by closing PBAC's bank accounts days before the closing date, it was wrongfully forced to assign its purchase rights to Broadview and execute the Termination Agreement in exchange for return of its earnest money and $500,000 to be paid by Broadview upon execution of an assignment. As a matter of law, PBAC cannot show that the date when Broadview and ESA would close on the Austin Property purchase is information that "a reasonable person would attach importance to and would be induced to act on" when deciding whether to execute the Termination Agreement. It is undisputed that ESA was unwilling to extend the closing date past October 29 *for PBAC*, having previously granted it five extensions. Thus, PBAC's choices remained the same regardless of when Broadview and ESA would close on the purchase or if they ever closed on the purchase. PBAC could either (1) close on October 29 (which it asserts was impossible because ESA had closed its bank accounts), (2) lose its earnest money for failing to close, or (3) assign its purchase rights to Broadview and get its earnest money back, plus an additional $500,000, by executing the Termination Agreement. Once PBAC chose to execute the Termination Agreement, it became a stranger to the transaction and no longer had

15

an interest in or influence over the closing date. Accordingly, we conclude that PBAC failed to show a basis in law or fact for the element of a material misrepresentation for its fraud claims.

### 2. PBAC failed to plead sufficient facts to demonstrate that it was justified in relying on the allegedly misrepresented closing date.

We next consider whether PBAC's petition sufficiently pleads facts that support justified reliance on ESA's alleged misrepresentation that it would close with Broadview on the same day that the parties executed the Termination Agreement (assuming for the sake of argument that this misrepresentation had been material). The Texas Supreme Court has identified at least two circumstances in which a plaintiff's purported reliance on a misrepresentation is unjustifiable as a matter of law: (1) when "red flags" render reliance objectively unreasonable, and (2) when the misrepresentation directly contradicts the parties' written agreement. *JPMorgan*, 546 S.W.3d at 655, 658. In addition, reliance is likely less justifiable if the transaction involves sophisticated parties dealing at arm's length. *Id.* at 654.

Here, the parties are business entities represented by counsel in a multimillion-dollar arm's-length transaction. In addition, ESA's alleged misrepresentation that the closing date would not be extended under any circumstances and that ESA and Broadview would close on October 29, 2021, directly contradicts the terms of the Termination Agreement. The Termination Agreement states that "[i]n connection with and immediately after the Assignment, [ESA] and Broadview intend to enter into a new Agreement of Purchase and Sale to effectuate [ESA's] sale of the Austin Property . . . to Broadview (the "**New Contract**")," not that ESA and Broadview would close on the sale on October 29. And later, in the release provision, the Termination Agreement states "[t]he foregoing release and indemnification shall survive the Assignment and the closing of the New Contract or the termination of the New Contract, as applicable," language

16

that would not be necessary if the New Contract was closing that same day. Finally, and most critically, the Termination Agreement provides that PBAC's $2,050,000 earnest money and the extra $500,000 shall be paid within one business day of the execution of the agreement. Since October 29, 2021, was a Friday, this term meant the money would not be transferred to PBAC until three days later on Monday, November 1, 2021. Thus, the Termination Agreement would not be fully consummated until November 1. Accordingly, the alleged misrepresentation directly contradicts the terms of the parties' written agreement.[10] We conclude that it would be objectively unreasonable for PBAC to rely on a representation that ESA and Broadview would close the deal on October 29, and thus, PBAC's pleading does not have a basis in law that supports justifiable reliance on the alleged misrepresentation.

In sum, the facts alleged in PBAC's petition did not establish a basis in law to demonstrate that a material misrepresentation was made or that there was justified reliance on that misrepresentation, and thus there is no basis in law for its fraud claims.

### B. PBAC did not sufficiently plead its other claims.

On appeal, PBAC does not separately address the dismissal of its other claims. As discussed above, the Termination Agreement contains a broad release provision in which the parties released each other from:

> any and all claims . . . arising, directly or indirectly, in any manner from and/or out of or related to either of the PSAs, this Agreement, the New Contract and any other agreement, arrangement or understanding alleged to have been made by any Released Party . . . which may be asserted or assessed against any Released

---

[10] To the extent that PBAC relies on email excerpts included in its petition to demonstrate that ESA represented that the closing with Broadview would occur on October 29, 2021, it is clear from the context of the emails, which contain terms of the Termination Agreement, that the statement, "Close is set for this Friday," refers to the closing of the Termination Agreement.

Party . . . arising out of, pertaining to or in any way connected with the transactions contemplated under said agreements . . . ."

Given the breadth of this release, and PBAC's failure to show that it was fraudulently induced to enter into the release, PBAC has not pleaded facts that support a basis in law for those claims.

Having concluded that PBAC failed to plead facts that demonstrate a basis in law for any of its claims, we overrule its second issue.

## III.    The trial court's award of attorneys' fees stands.

In its third issue, PBAC contends that we must reverse the trial court's various orders awarding attorneys' fees if we reverse the Rule 91a dismissal. Because we affirm the trial court's dismissal of PBAC's claims against ESA, we also affirm the attorneys' fees awarded. We overrule PBAC's third issue.

## CONCLUSION

Having overruled PBAC's issues on appeal, we affirm the trial court's judgment.

_____

Gisela D. Triana, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed:   August 29, 2024

18